# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 15, 2004   Decided February 1, 2005

No. 02-3082

UNITED STATES OF AMERICA,
APPELLEE

v.

RONALD JAMES TOMS, *A/K/A* BLOCK,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 93cr00367-01)

   *Elaine J. Mittleman* argued the cause for appellant. On the briefs were *Pleasant S. Brodnax, III* and *Mary E. Davis*.

   *Elizabeth H. Danello*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Kenneth L. Wainstein*, U.S. Attorney, and *John R. Fisher* and *Thomas J. Tourish, Jr.*, Assistant U.S. Attorneys. *Roy W. McLeese, III*, Assistant U.S. Attorney, entered an appearance.

   Before: GINSBURG, *Chief Judge*, and TATEL and ROBERTS, *Circuit Judges*.

   Opinion for the Court filed by *Circuit Judge* ROBERTS.

ROBERTS, *Circuit Judge*: Appellant Ronald Toms appeals the district court's denial of his motion under 28 U.S.C. § 2255 to vacate convictions for several drug and firearms offenses. He argues that the deficient performance of his trial attorney deprived him of his constitutional right to effective assistance of counsel. We conclude that the district court did not err in denying Toms's motion or in refusing to conduct an evidentiary hearing, and affirm.

**I.**

In November 1993, a grand jury returned a superseding indictment against Toms and two co-defendants, Jimmy Thomas and Keith Bradley. The first count of the indictment charged all three men with conspiracy to distribute and to possess with intent to distribute 50 grams or more of cocaine base from 1987 to October 1993. 21 U.S.C. § 846. Three counts charged Toms and Bradley with offenses stemming from the circumstances of their September 10, 1993 arrests: possession of 50 grams or more of cocaine base with intent to distribute, 21 U.S.C. §§ 841(a)(1) & (b)(1)(A)(iii); using or carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c); and carrying a pistol without a license, D.C. CODE ANN. §§ 22-3204(a) & 105 (1981). Toms and Thomas were also charged with distributing cocaine base on two separate occasions in July and September 1993. Thomas and Bradley each pled guilty. Toms chose to proceed to trial.

At trial, the government presented evidence showing that from 1987 to 1993, Toms supplied crack cocaine to Thomas, Bradley, and ten to fifteen other street-level dealers in Washington, D.C. Thomas testified that he had received drugs from Toms "hundreds" of times, Trial Tr. 1/13/95 at 124, and saw Toms supplying other dealers on many occasions. This account was corroborated by the testimony of two other prosecution witnesses who at one time or another sold drugs in the same

vicinity as Toms. Testimony from several law enforcement agents also indicated that, on four occasions between 1987 and 1992, Toms had been stopped in cars in which drugs, guns, or large amounts of cash were found.

The government also offered evidence regarding Toms's arrest. In September 1993, law enforcement officers had Toms and Bradley under surveillance. On September 10, the officers were following a vehicle Toms was driving with Bradley as a passenger. When Toms began speeding and weaving in and out of traffic, the officers pulled the vehicle over. After removing Toms and Bradley, the officers noticed a loaded nine-millimeter handgun on Bradley's seat. Searches at the scene revealed $2,000 in cash on Toms and another $8,000 stuffed in an air vent of the vehicle. The vehicle was impounded and searched more thoroughly. A drug-sniffing dog found a plastic bag containing 67.8 grams of cocaine base under the back seat. Evidence indicated that the vehicle belonged to Toms.

Faced with a strong case against his client, Toms's attorney pursued several lines of defense. First, he sought to cast doubt on Thomas's testimony. He noted that Thomas was cooperating with the government and had made inconsistent statements in an earlier affidavit. Two defense witnesses also stated that Thomas had told them he was supplied with drugs by a source in Detroit. Second, the defense called Bradley, who testified that the drugs and gun found in the vehicle belonged to him and that Toms was unaware of them. Finally, Toms himself took the stand, in part to explain that the large sum of cash recovered at the time of his arrest was intended for the production of a compact disc for a recording company he owned.

A jury convicted Toms on the conspiracy charge, the charge of possession with intent to distribute, and the two firearms charges. He was acquitted of the two counts of cocaine distribution. The court sentenced Toms to concurrent life sentences for

the drug counts, followed by a consecutive five-year sentence on the federal weapons charge. He also received a one-year sentence on the second weapons charge, concurrent with the other sentences. We affirmed the conviction and sentence on appeal. *United States v. Toms*, 136 F.3d 176 (D.C. Cir. 1998).

Toms subsequently filed a motion under 28 U.S.C. § 2255 asking the district court to vacate his convictions. He claimed that his attorney had committed a host of errors at trial, depriving him of his right to effective assistance of counsel. Toms pressed two principal arguments: first, that his attorney elicited damaging testimony about the criminal activities of Toms's family and friends; and second, that due to inadequate preparation, counsel was forced to stipulate to damaging evidence and failed to subpoena two defense witnesses whose testimony might have been helpful.[1] In addition to the claim of ineffective assistance, Toms argued that the jury had been contaminated when it was shown an exhibit that had not been admitted into evidence. In a supplemental motion, Toms restyled this claim as a charge that the prosecution had failed to disclose the exhibit as required by *Brady v. Maryland*, 373 U.S. 83 (1966).[2]

The district court found no merit to Toms's ineffective assistance claim and rejected his request for an evidentiary hearing. The same judge who had presided over Toms's trial found that counsel was prepared and that his decisions to elicit

[1] In addition to the contentions discussed in the text, Toms argued that counsel did not adequately cross-examine Thomas because of a potential conflict of interest, did not object to the prosecution's cross-examination of Bradley, neglected to build a record for appeal, and failed to call a third witness who would have testified that Toms was traveling to a recording studio at the time of his arrest. He renews these claims on appeal.

[2] Toms also raised other claims not considered here because they were rejected by the district court and not renewed on appeal.

certain testimony about Toms's associates and not to subpoena the witnesses were part of a trial strategy, falling within the "wide range of reasonable professional assistance." Mem. Op. at 7. Furthermore, the court found that any errors by counsel were not prejudicial, given "the government's overwhelming evidence" against Toms. *Id.* at 14. The court also rejected Toms's *Brady* claim, on the ground that there was no reasonable probability that the result in the case would have been different had the exhibit been disclosed. *Id.* at 11.

On appeal, Toms renews his ineffective assistance and *Brady* claims and challenges the district court's refusal to hold a hearing on his section 2255 motion.

## II.

It is well-established that the Sixth Amendment right to counsel comprehends "the right to effective assistance of counsel," *Strickland v. Washington*, 466 U.S. 668, 686 (1984), and that Sixth Amendment claims may be raised in section 2255 proceedings, *Kimmelman v. Morrison*, 477 U.S. 365 (1986). A claim of ineffective assistance of counsel requires two showings: (1) that counsel's performance was deficient and (2) that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 687, 694. Our evaluation of counsel's performance is "highly deferential," and we must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

The standard under which we review a district court's dismissal of a section 2255 petition alleging ineffective assistance is unsettled. Whether counsel's performance was deficient and whether any errors were prejudicial are mixed questions of law and fact, *id.* at 698; *United States v. Weaver*, 234 F.3d 42, 46 (D.C. Cir. 2000); *United States v. Askew*, 88 F.3d 1065, 1070 (D.C. Cir. 1996), but, as we pointed out in *Askew*, that does not

define the proper standard of appellate review. *See* 88 F.3d at 1070–71. Determinations of mixed questions are sometimes reviewed *de novo*, *see, e.g.*, *Ornelas v. United States*, 517 U.S. 690, 695–99 (1996) (reasonable suspicion and probable cause), and sometimes only for abuse of discretion, *see, e.g.*, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 401–05 (1990) (rulings under Federal Rule of Civil Procedure 11); *Pierce v. Underwood*, 487 U.S. 552, 557–63 (1988) (whether legal positions are "substantially justified" under Equal Access to Justice Act). While other circuits have concluded that *de novo* review of district court rulings on ineffective assistance of counsel claims is appropriate, *see, e.g.*, *Cooper v. United States*, 378 F.3d 638, 640 (7th Cir. 2004); *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003), we have thus far expressly declined to fix the appropriate standard, not having been confronted with a case in which the standard made a difference. *See, e.g.*, *Weaver*, 234 F.3d at 46.

We persist in our agnosticism on the appropriate standard of review in this case. The parties have not joined issue on the question, and we are reluctant to decide such an important question in the absence of briefing and argument on it. It is unnecessary for us to do so, because we find that Toms's claim fails even under the more searching *de novo* standard.

**A.** Toms first argues that his attorney's lack of preparation caused him to enter into stipulations harmful to the defense. In particular, Toms objects to three stipulations: first, that cocaine residue was found on the floor and seat of the vehicle Toms was driving the day of his arrest and on the two rolls of cash recovered from the vehicle and Toms; second, that Toms may have attempted to alter his normal handwriting in a sample he provided to the FBI; and third, that Bradley, a key defense witness, was convicted for attempted drug possession in 1987, when in fact the conviction had been expunged.

Mindful that we are to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," *Strickland*, 466 U.S. at 689, we do not think that counsel's decisions with respect to the first two stipulations were unreasonable. *See United States v. Gaskin*, 364 F.3d 438, 468 (2d Cir. 2004) ("counsel's decision to stipulate to certain evidence, like his decisions to offer or object to evidence, involves a strategic choice, which is 'virtually unchallengeable' if made after thorough investigation") (quoting *Strickland*, 466 U.S. at 690). FBI agents were prepared to testify concerning the substance of the first two stipulations; Toms does little to explain what his counsel might have done had those witnesses been forced to do so. At most, he suggests that counsel could have cross-examined the agents about the amount of cocaine residue found in the vehicle or about the general prevalence of cocaine residue on paper currency. Whether these lines of questioning would have yielded any gains for Toms or only highlighted damning evidence is a matter of speculation and precisely the sort of post hoc judgment that *Strickland* admonishes us to avoid.

Toms nevertheless contends that the drug residue stipulation was especially egregious in that it was the "only link between appellant and the drugs seized" from the car. Appellant's Br. at 11. Whether or not this assertion is true, the argument assumes too rosy a picture of what would have transpired without the stipulation. Counsel did not face a choice between stipulating and having no evidence presented at all, but between stipulating and having live testimony about the cocaine residue presented by an FBI agent. While cross-examination may have helped Toms, he may have benefitted still more from the stipulation, *see United States v. Crowder*, 141 F.3d 1202, 1207 (D.C. Cir. 1998) (en banc) ("Even when coupled with a jury instruction that the fact stipulated must be considered proven, a stipulation cannot give the Government everything the evidence could show"

(internal quotation marks omitted)), and we cannot say that counsel's decision was unreasonable. *See United States v. Geraldo*, 271 F.3d 1112, 1116 (D.C. Cir. 2001) ("The defendant bears the burden of proving that his lawyer made errors 'so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment' and that counsel's deficient performance was prejudicial." (quoting *Strickland*, 466 U.S. at 687)).

The stipulation to Bradley's expunged conviction presents a closer question. The government does not argue that counsel acted reasonably in stipulating to a conviction that did not exist; the erroneous stipulation could easily have been avoided with careful investigation. The government does argue, however, and we agree, that no prejudice can be shown. On the stand, Bradley denied ever having been convicted of a crime as an adult before entering his guilty plea. The government then impeached him on cross-examination with multiple prior convictions, including the expunged 1987 conviction. In fact, Bradley had three other convictions — two for cocaine possession and one for a weapons charge — to which Toms's counsel appropriately stipulated. It is doubtful that the inclusion of one additional expunged conviction caused even incremental harm to Bradley's credibility, and entirely farfetched that the outcome of Toms's trial would have been different without the stipulation. What is more, Bradley was called to the stand in part to testify that he, not Toms, possessed the drugs and gun found in the vehicle when he and Toms were arrested. Another prior conviction for attempted drug possession seems just as likely to make Bradley's testimony to that effect more, not less, credible.

Toms next argues that, due to inadequate preparation, his trial counsel failed to secure the presence of several witnesses whose testimony would have helped his defense. Two witnesses who were expected to testify about the activities of Toms's recording company were never subpoenaed and failed to appear

at trial. According to Toms, one of the witnesses would have stated that he sold more than $10,000 worth of tapes to Toms, and such testimony could have explained what Toms intended to do with the cash found on him at the time of his arrest (buy more tapes).

The district court rejected Toms's claims, finding that counsel's decision not to subpoena the additional witnesses was strategic and, in any case, did not prejudice the defense. Without addressing the question of deficient performance, the testimony of these witnesses would not have altered the outcome of Toms's trial. The existence of Toms's recording company was not in dispute; the prosecution readily acknowledged as much in closing argument. Indeed, the government even elicited testimony from an FBI agent about documents showing that Toms's company had purchased $4,000 in audiotapes. The testimony of the two witnesses would therefore have only offered unnecessary evidence on an issue no longer in doubt. *See United States v. Mitchell*, 216 F.3d 1126, 1131 n.2 (D.C. Cir. 2000) (no prejudice where witness's testimony would have been cumulative). More important, as their testimony would not have shown that Toms's company produced any income, it would have done nothing to illuminate the issue of where Toms got the cash in the first place. *See United States v. Moore*, 104 F.3d 377, 391 (D.C. Cir. 1997) (no ineffectiveness in failing to subpoena a witness whose testimony was "tangential at best").

Toms argues in a similar vein that trial counsel was ineffective in not calling a witness named Walter Cloud, who apparently would have testified that he was expecting Toms at a recording studio the day he was arrested. According to Toms, Cloud was promised in the defense's opening statement, and, when he failed to appear, the jury likely concluded that Toms's story about the recording studio was unsupported. This claim is without merit. First, it is not at all clear that counsel promised to call Cloud. In his opening statement counsel said, "Toms was

late for a video session — he had video session scheduled; we'll call witnesses on that." Trial Tr. 1/11/95 at 58. And, in fact, two defense witnesses — Toms and Bradley — did testify on this point. There is no reason counsel should be thought to have performed deficiently simply because he did not call a third. *See United States v. Smith*, 198 F.3d 377, 386 (2d Cir. 1999) ("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." (internal quotation marks omitted)). Moreover, Cloud's testimony would hardly have altered the outcome of the trial. Like that of the unsubpoenaed witnesses, his testimony would have only confirmed what the government was willing to acknowledge — that Toms owned a recording company — and done nothing to explain the source of Toms's money.[3]

Toms further argues that his attorney was ineffective in failing to challenge the government's suggestion, in its cross-examination of Bradley, that Toms had purchased Bradley's cooperation by paying for his attorney. The record, however, reveals that the government had a good faith basis for this line of questioning. Thomas had already testified that Toms offered $10,000 in exchange for Thomas's cooperation, and the govern-

_____

[3] Toms also argues that counsel failed to deliver on an opening-statement promise to show that Toms's fingerprints had not been found on "any gun, no ammunition, no drugs, period, period, back to 1987." Trial Tr. 1/11/95 at 55. Counsel unsuccessfully tried to get the prosecution to stipulate to this, but no prejudice can be shown: the prosecution's fingerprint specialist testified that Toms's fingerprints were not found on the gun or on the bag containing the drugs, and there was no other testimony linking Toms's prints to any gun, ammunition, or drugs. Indeed, Toms's counsel highlighted the absence of fingerprint evidence in closing. *See* Trial Tr. 1/24/95 at 78.

ment had in its possession — and later played for the jury — a taped phone call in which Bradley was heard telling his girlfriend to get money from Toms's mother. Together, this was enough to support the government's questioning of Bradley. *See United States v. Sampol*, 636 F.2d 621, 658 (D.C. Cir. 1980) ("the questioner must be in possession of some facts which support a genuine belief that the witness committed the offense or the degrading act to which the questioning relates" (internal quotation marks omitted)). There was therefore nothing unreasonable about counsel's decision not to object.

Nor could counsel have successfully argued, as Toms contends, that the government constructively amended the indictment — which charged a conspiracy to distribute cocaine or cocaine base — by introducing evidence of marijuana and PCP possession. To support a claim of constructive amendment, he would have needed to show that "the evidence presented at trial *and* the instructions given to the jury so modify the elements of the offense charged that the defendant may have been convicted on a ground not alleged by the grand jury's indictment." *United States v. Sayan*, 968 F.2d 55, 59–60 (D.C. Cir. 1992) (internal quotation marks omitted) (alteration in original). Toms's claim is plausible only because the district court instructed the jury as to the first element of the conspiracy count that, to support a guilty verdict, it had to find an agreement "to distribute or possess with intent to distribute a controlled substance." Trial Tr. 1/24/95 at 118. The court's instruction as to the second element, however, made clear that the jury had to find that Toms "knowingly and willfully participated in the conspiracy" with an intent to distribute "cocaine or cocaine base." *Id.* at 119.

"[I]t is not our task to review only isolated parts of the charge." *United States v. Perholtz*, 836 F.2d 554, 559 (D.C. Cir. 1988); *see also Cupp v. Naughten*, 414 U.S. 141, 146–47 (1973) ("a single instruction to a jury may not be judged in artificial

isolation, but must be viewed in the context of the overall charge"). The instructions, read as a whole, required the jury to find that Toms was engaged in a conspiracy to distribute cocaine or cocaine base, as alleged in the indictment. A constructive amendment claim could not have succeeded, and counsel's decision not to advance such a claim was therefore not unreasonable.

Toms's remaining ineffective assistance arguments are equally unavailing. He argues that counsel inexplicably elicited damaging testimony about Bradley from a government witness and portrayed Toms's relatives as involved in drug trafficking. Although this may not have been an ideal line of defense, Toms's counsel faced a considerable challenge in explaining away the suspicious circumstances of his client's life: the expensive cars he drove, the money spent on tapes and videos, and the multiple occasions — particularly the last — in which he was found in cars with drugs, firearms, or large amounts of cash. We conclude that these decisions of Toms's counsel were tactical, forced on him by the strong case against Toms, and that, in any event, they did not result in any prejudice.

Nor do we find any merit to the contention that counsel's cross-examination of Thomas was impeded by a conflict of interest. Thomas had once sought to hire Toms's attorney but, according to Thomas's testimony, "couldn't afford it." Trial Tr. 1/13/95 at 115. Toms was made aware of the meeting before trial and agreed to go forward. This, by itself, did not give rise to the kind of *actual* conflict of interest required by our cases — namely, one that constrains an attorney "to make a choice advancing his own interests to the detriment of his client's interest." *United States v. Bruce*, 89 F.3d 886, 893 (D.C. Cir. 1996) (internal quotation marks omitted). The prosecutor elicited the testimony from Thomas to help rebut Toms's effort to portray Thomas as "a big-time drug dealer, with lots of money." Trial Tr. 1/13/95 at 114. Toms's counsel explained in

a pretrial status conference that he did not remember anything from the meeting, so there is no reason to think that he was in a position to rebut Thomas's testimony. Toms points to no basis for challenging Thomas's assertion that he could not afford a lawyer, so he has not carried his burden of showing that the alleged conflict "had some negative effect upon his defense." *United States v. Gantt*, 140 F.3d 249, 254 (D.C. Cir. 1998) (internal quotation marks omitted).

**B.** We can also easily dispose of Toms's claim that the government failed to disclose material exculpatory evidence as required by *Brady*. The evidence at issue is a government photograph of the backseat of Toms's vehicle after the impoundment and subsequent search. In his initial section 2255 motion, Toms argued that the exhibit was taken into the jury room despite not being admitted into evidence, thus contaminating the jury. He subsequently argued, in a supplemental motion, that the same exhibit contained exculpatory information which the government should have disclosed to the defense. It is this latter argument that Toms renews on appeal. We review such *Brady* claims *de novo*. *In re Sealed Case (Brady Obligations)*, 185 F.3d 887, 892 (D.C. Cir. 1999).

We do not know with certainty whether or not, as Toms claims, the photograph depicts the bag of drugs sitting on the backseat because the government can no longer find the exhibit. The government contends that, in any case, the photograph could not have shown the drugs in their original location because no photographs were taken until after a drug-sniffing dog had discovered the drugs and they had been moved. Even assuming the photograph shows the drugs as they were originally positioned, however, Toms cannot demonstrate " 'a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.' " *United States v. Bowie*, 198 F.3d 905, 908 (D.C. Cir. 1999) (quoting *Kyles v. Whitley*, 514 U.S. 419, 433–34 (1995)). There

is little reason to believe that the drugs would have been any less connected with Toms in the jury's mind if the bag were shown to have been on top of the backseat instead of under it. The government's case certainly did not hinge on the issue. Indeed, one government witness even stated on cross-examination that it would have been easier for the passenger (Bradley) than the driver (Toms) to have placed the drugs under the backseat. Trial Tr. 1/17/95 at 71. There is simply not a "reasonable probability" that, had the exhibit been disclosed, it would have altered the outcome of Toms's trial.

**C.** Finally, we reject Toms's claim that the district court was required to hold a hearing before ruling on his section 2255 motion. When the judge deciding the section 2255 motion also presided at petitioner's trial, the court's decision not to hold a hearing is "generally respected as a sound exercise of discretion." *United States v. Morrison*, 98 F.3d 619, 625 (D.C. Cir. 1996); *see also Sayan*, 968 F.2d at 66. Here, Toms does not point to any information outside the record that would have substantially assisted the district court in its disposition and thus perhaps necessitated a hearing. We therefore see no reason to depart from our usual practice in this case.

\* \* \*

Toms's attorney had the difficult task of rebutting the prosecution's strong case against his client—in particular, the stubborn fact that the car Toms was driving at the time of his arrest, shown to belong to him, contained a nine-millimeter pistol, thousands of dollars in cash, and 67.8 grams of cocaine base. To that end, counsel sought to undermine the government's witnesses and dissociate his client from the physical evidence. While Toms may now find much to criticize in those efforts, his contentions, taken singly or together, do not amount to a viable claim of ineffective assistance of counsel.

*Affirmed.*