# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued January 7, 2010        Decided February 5, 2010

No. 09-3053

UNITED STATES OF AMERICA,
APPELLEE

v.

DARRELL A. GOODWIN, ALSO KNOWN AS GOODY,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:99-cr-00122-TFH-1)

*Beverly G. Dyer*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A. J. Kramer*, Federal Public Defender.

*Patricia A. Heffernan*, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were *Elizabeth A. Trosman* and *Roy W. McLeese III*, Assistant U.S. Attorneys.

Before: SENTELLE, *Chief Judge*, TATEL, *Circuit Judge*, and EDWARDS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* TATEL.

TATEL, *Circuit Judge*: Following affirmance of his conviction for possession with intent to distribute cocaine, appellant filed a 28 U.S.C. § 2255 motion alleging, among other things, that defense counsel rendered ineffective assistance by failing to offer expert testimony in support of his request for a "reverse sting" departure pursuant to U.S.S.G. § 2D1.1, Application Note 14. The district court denied the motion. Finding no prejudice, and rejecting appellant's other arguments, we affirm.

**I.**

Prior to his arrest for purchasing cocaine from undercover Drug Enforcement Administration (DEA) agents, appellant Darrel Goodwin had on several occasions sold DEA Agent Kenneth Abrams small quantities of heroin. During one such transaction, Goodwin told Abrams that he wanted to buy some cocaine, but was unhappy with the current price of the drug. Abrams responded that he had a source that could provide a single kilogram of cocaine for about $24,000. He then introduced Goodwin to Special Agent Robert Valentine, who posed as a dealer and offered to sell Abrams and Goodwin five kilos for $100,000—a bulk discount of sorts. Abrams gave Valentine a fake down payment, and Goodwin said he could put up $37,000.

A few days later, Goodwin and Abrams met with Valentine at a hotel. Although able to come up with only about $20,000, Goodwin said that he still wanted to buy three kilos of cocaine. Accordingly, Valentine agreed to sell him one kilo for about $20,000 cash, and to front him the second in exchange for $1,500 worth of heroin on the understanding that Goodwin would pay off the balance with proceeds from street sales of the cocaine. Goodwin planned on returning for the third kilo the next day, but DEA agents arrested him as he left the hotel room with the two kilos.

Goodwin pleaded guilty in the U.S. District Court for the District of Columbia to possession with intent to distribute 500 grams or more of cocaine. *See* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii). Because he qualified as a career offender under U.S.S.G. § 4B1.1, the federal Sentencing Guidelines range for his offense came to 188–235 months' imprisonment. Pointing out that Goodwin had been arrested in a "reverse sting"—an operation in which undercover agents sell drugs to the defendant—defense counsel asked the court to grant a downward departure on the ground that the DEA agents induced Goodwin to purchase more cocaine than he otherwise would have by selling it to him at a price "substantially below the market value." U.S.S.G. § 2D1.1, Application Note 14. Although counsel failed to call an expert witness in support of this argument, Abrams testified for the government that the market price for a single kilo of cocaine was $27,000 in New York or Miami and that the price would typically be higher in Washington, D.C. The district court denied Goodwin's reverse sting departure request and imposed a sentence of 188 months—the bottom end of the Guidelines range.

Goodwin appealed to this court, again complaining that the price for the first kilo—$20,000—was artificially low and that the credit terms for the second kilo were overly generous. Finding that Goodwin had failed to prove that these terms were substantially more favorable than the market would bear, we affirmed the district court's rejection of a reverse sting departure. *United States v. Goodwin*, 317 F.3d 293, 297–99 (D.C. Cir. 2003).

Alleging ineffective assistance of counsel, Goodwin moved to vacate or set aside his sentence pursuant to 28 U.S.C. § 2255. Specifically, Goodwin argued that defense counsel performed deficiently in failing to call an expert to support his request for a reverse sting departure. In support,

Goodwin introduced an affidavit from a former police officer who stated that the market price for a kilo of cocaine in Washington, D.C., would have ranged from $27,000 to $35,000, and that a buyer with a strong relationship with the source could have purchased two or three kilos for about $24,000 each. The district court, believing that defense counsel could have deemed such testimony cumulative in light of Agent Adams's testimony regarding cocaine prices, concluded that counsel had not provided deficient assistance. *United States v. Goodwin*, 607 F. Supp. 2d 47, 54–55 (D.D.C. 2009). The court also rejected Goodwin's theory that counsel should have argued that Goodwin's traumatic medical history—he suffered severe burns over 60 percent of his body in a 1986 house fire—rendered him eligible for downward departures under U.S.S.G. §§ 5K2.11 (lesser harms) and 5H1.4 (extraordinary physical impairment). *Id.* at 50–51, 52–53.

Pursuant to a certificate of appealability (COA) granted by the district court, Goodwin now appeals. *See* 28 U.S.C. § 2253(c)(1) (requiring a COA to appeal a final order in a section 2255 proceeding).

## II.

To prevail on an ineffective assistance of counsel claim a defendant must "show both that 'counsel's representation fell below an objective standard of reasonableness,' and that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Smith v. Spisak*, 130 S.Ct. 676, 685 (2010) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694 (1984)) (citations omitted). "[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components

of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

Whether defense counsel rendered ineffective assistance presents a mixed question of law and fact. *Id.* at 698. Sometimes we review such questions de novo and sometimes for abuse of discretion. But "not having been confronted with a case in which the standard made a difference" in an ineffective assistance of counsel claim, "we have thus far expressly declined to fix the appropriate standard." *United States v. Toms*, 396 F.3d 427, 433 (D.C. Cir. 2005). Here too we have no need to settle the issue because Goodwin's ineffective assistance claim fails "even under the more searching *de novo* standard." *Id.*

We begin with the reverse sting departure. Guidelines Application Note 14 states:

> If, in a reverse sting (an operation in which a government agent sells or negotiates to sell a controlled substance to a defendant), the court finds that the government agent set a price for the controlled substance that was substantially below the market value of the controlled substance, thereby leading to the defendant's purchase of a significantly greater quantity of the controlled substance than his available resources would have allowed him to purchase except for the artificially low price set by the government agent, a downward departure may be warranted.

U.S.S.G. § 2D1.1, Application Note 14. Goodwin argues that by failing to support the request for a reverse sting departure with expert testimony, defense counsel rendered constitutionally deficient assistance—particularly given our

recognition in his direct appeal that the district court rejected the request as "unsupported by the evidence." *Goodwin*, 317 F.3d at 295. The government responds that the reverse sting departure is inapplicable because Goodwin was sentenced not based on drug quantity but rather as a career offender. We agree with the government.

Goodwin pleaded guilty to possession with intent to distribute 500 grams or more of cocaine, thus subjecting him to a statutory maximum term of forty years. *See* 21 U.S.C. § 841(b)(1)(B). Under the Guidelines' career offender provision, the offense level for a career criminal facing a statutory maximum of forty years is 34. U.S.S.G. § 4B1.1(b). Because 34 is "greater than the offense level otherwise applicable," *id.*, i.e., the offense level calculated based on drug quantity pursuant to U.S.S.G. § 2D1.1, the district court sentenced Goodwin under the career offender table. For this reason, the government argues, whether or not the DEA agents induced Goodwin to purchase more than 500 grams of cocaine is irrelevant because any drug quantity beyond 500 grams played no role in determining his Guidelines range.

Goodwin questions neither the district court's calculation of his career offense level nor the government's assertion that he possessed sufficient cash to purchase the 500 grams of cocaine that set that level. Instead, he argues that the government erroneously assumes that Note 14 only authorizes a court to recalculate drug quantity. According to Goodwin, the sentencing court must apply a reverse sting departure, like other departures, *after* the offense level is set. Thus the court can depart under Note 14 even where, as here, the marginal increase in drug quantity allegedly induced by price manipulation had no impact on offense level. We have no need to decide whether Note 14 authorizes recalculations, departures, or both, for we conclude that Goodwin has failed

to show prejudice, i.e., a reasonable probability that the district court would have granted a departure even if defense counsel had provided evidence of drug prices.

Guidelines section 2D1.1 increases a defendant's base offense level as the amount of drugs involved increases. This linkage serves the purpose of imposing punishment proportionate to the defendant's culpability. In a reverse sting operation, however, where the government controls the price and quantity of drugs sold, this sentencing scheme enables law enforcement agents to "structure sting operations in such a way as to maximize the sentences imposed on defendants." *United States v. Staufer*, 38 F.3d 1103, 1107 (9th Cir. 1994). Manipulation of this sort effectively decouples drug quantity from culpability, thereby undermining one purpose of the quantity-based sentencing ranges set forth in the Guidelines. Note 14 represents the Sentencing Commission's recognition of this problem and of "the unfairness and arbitrariness of allowing drug enforcement agents to put unwarranted pressure on a defendant in order to increase his or her sentence without regard for his predisposition, his capacity to commit the crime on his own, and the extent of his culpability." *Id.*

A reverse sting departure pursuant to Note 14 is therefore most appropriate where the government, in setting overly generous price terms, induces a defendant to purchase more drugs than he otherwise could afford and that difference in drug quantity affects the defendant's sentence. But where, as here, drug quantity bears no relation to the defendant's offense level (beyond setting the floor of 500 grams), the sentencing court has little reason to grant a departure to correct any artificial inflation in drug quantity resulting from alleged price manipulation.

At oral argument, Goodwin's counsel suggested that if presented with expert testimony, the district court might nonetheless have chosen to grant a reverse sting departure in order to "send a message to the government that these stings need to be fair." Oral Arg. at 4:22. As Judge Gertner has explained, however, Note 14 of the Guidelines "focuses less on the motives of the government, and more on the defendant's predisposition." *United States v. Lora*, 129 F. Supp. 2d 77, 90 (D. Mass. 2001) (discussing then-Note 15); *see also United States v. Searcy*, 233 F.3d 1096, 1101 (8th Cir. 2000) ("[T]he Sentencing Guidelines focus the sentencing entrapment analysis on the defendant's predisposition. The Sentencing Guidelines never mention outrageous government conduct."). And, in other sentencing manipulation cases, we have taken to heart the Supreme Court's "warn[ing] against using an entrapment defense to control law enforcement practices of which a court might disapprove." *United States v. Walls*, 70 F.3d 1323, 1329 (D.C. Cir. 1995) (rejecting contention that undercover agents' insistence that cocaine be delivered in crack form constitutes sentencing entrapment and emphasizing that the primary element in an entrapment defense is the defendant's predisposition) (citing *United States v. Russell*, 411 U.S. 423, 435 (1973)); *see also United States v. Hinds*, 329 F.3d 184, 188 (D.C. Cir. 2003) (same).

This is not to say that defendants sentenced as career offenders are precluded, as a matter of law, from obtaining the benefit of a reverse sting departure. To the contrary, under different circumstances the quantity of drugs a defendant was induced to purchase could affect the defendant's position on the career offender table. Although we do not foreclose the possibility that a sentencing court may also, in some circumstances, have cause to grant a reverse sting departure even where drug quantity had no effect on offense level,

Goodwin alleges ineffective assistance of counsel, meaning that to prevail here he must show a "reasonable probability" that expert testimony as to drug market conditions "would have made a significant difference." *Smith*, 130 S.Ct. at 685 (internal quotation marks omitted). Goodwin was ready, willing, and able to purchase at fair market value the 500 grams of cocaine that ultimately determined his sentence as a career offender. He has given us no reason to think that the district court would nonetheless have granted a departure solely to punish the government for bad behavior.

## III.

We can easily dispose of Goodwin's remaining arguments.

He contends that counsel should have sought a downward departure under the Guidelines' "lesser harms" provision, which authorizes a reduced sentence where a defendant commits a crime "in order to avoid a perceived greater harm." U.S.S.G. § 5K2.11. According to Goodwin, "[c]ounsel could have presented evidence to support [his] claim that he suffered from excruciating pain and sold drugs to support an addiction to heroin, which developed after he was extensively treated with opioids" as a result of his severe burns. Appellant's Br. 19–20. The district court expressly acknowledged the possibility that Goodwin's pain drove him to addiction, but nonetheless concluded that his long history of drug dealing outweighed that mitigating factor. *See Goodwin*, 607 F. Supp. 2d at 51. Given this, Goodwin has failed to show a reasonable probability that the district court, having effectively rejected the predicate of Goodwin's lesser harms argument, would have departed had counsel formally invoked section 5K2.11.

Next, Goodwin asserts that counsel provided ineffective assistance in failing to argue that the pain stemming from Goodwin's burn injuries constitutes an "extraordinary physical impairment" warranting departure under U.S.S.G. § 5H1.4. That Guideline, however, makes clear that physical condition is "not ordinarily relevant in determining whether a departure may be warranted," *id.*, and we have emphasized that section 5H1.4 "requires not just infirm[ity]" but "*extraordinary* physical impairment," *United States v. Brooke*, 308 F.3d 17, 21 (D.C. Cir. 2002) (emphasis added). Because Goodwin has shown neither that his impairment is "present to an exceptional degree," *Koon v. United States*, 518 U.S. 81, 96 (1996), nor that his infirmity is such that "home detention may be as efficient as, and less costly than, imprisonment," U.S.S.G. § 5H1.4, we see no prejudice arising from counsel's failure to pursue a section 5H1.4 departure. *Cf. United States v. Smith*, 27 F.3d 649, 652 (D.C. Cir. 1994) (explaining that the Sentencing Commission identified extreme disability as one offender characteristic that may, in some cases, "make it possible to achieve the goals of a prison sentence . . . with an alternative confinement").

Goodwin claims that counsel should have sought a departure under section 4A1.3(b) (over-representation of seriousness of criminal history) and argued that his case falls outside the Guidelines' "heartland," *Koon*, 518 U.S. at 96. But Goodwin never sought a COA on these issues, nor did the district court grant one. Because a COA is a "jurisdictional prerequisite" to appellate review, *Miller-El v. Cockerell*, 537 U.S. 322, 336 (2003), neither argument is properly before us.

According to Goodwin, even if his reverse sting and medical history claims "failed to establish prejudice alone, the cumulative weight of both demonstrate[d] a reasonable probability of a more favorable outcome." Appellant's Br.

29; *see* U.S.S.G. § 5K2.0. As noted above, however, a reverse sting departure is inapplicable in these circumstances, and Goodwin's medical history claims are without merit. That leaves no combination of factors "present to a substantial degree" that could render this case an "exceptional one," particularly given the Commission's belief "that such cases should occur extremely rarely." U.S.S.G. § 5K2.0(c) & Application Note 3(C).

Finally, Goodwin insists that he should be resentenced under *United States v. Booker*, 543 U.S. 220 (2005), which the Supreme Court issued while his section 2255 motion was pending in the district court. That argument, however, is foreclosed by *In re Fashina*, 486 F.3d 1300, 1303–04 (2007), which held that *Booker* announced a non-watershed procedural rather than substantive rule and is therefore not retroactively applicable in collateral proceedings.

**IV.**

For the foregoing reasons, we affirm.

*So ordered.*