# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued December 6, 2011        Decided March 9, 2012
Reissued April 11, 2012

No. 10-3017

UNITED STATES OF AMERICA,
APPELLEE

v.

JESUS RODRIGUEZ,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cr-00344-1)

———

*A. J. Kramer*, Federal Public Defender, argued the cause for the appellant.

*Peter S. Smith*, Assistant United States Attorney, argued the cause for the appellee. *Ronald C. Machen Jr.*, United States Attorney, and *Roy W. McLeese III* and *Chrisellen R. Kolb*, Assistant United States Attorneys, were on brief.

Before: HENDERSON, *Circuit Judge*, and WILLIAMS and GINSBURG, *Senior Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Jesus Rodriguez (Rodriguez) appeals his sentence of 72-months' imprisonment resulting from his conviction on one count of distributing 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(ii). For the reasons set forth below, we remand to the district court for further sentencing proceedings consistent with this opinion.

**I.**

On October 23, 2008, Rodriguez offered to sell a confidential source (CS) of the Narcotics and Special Investigations Division of the Metropolitan Police Department (MPD) one kilogram of cocaine for $28,000. The next day, Rodriguez met the CS in a parking lot in Northeast Washington, D.C., entered his vehicle and handed him a black plastic bag full of 1,004 grams of cocaine. Rodriguez was promptly arrested by a MPD surveillance team.

On April 20, 2009, pursuant to a plea agreement and proffer of evidence, Rodriguez pleaded guilty to a one-count indictment charging him with the distribution of 500 grams or more of cocaine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(ii). The United States Probation Office prepared a presentence report (PSR) calculating Rodriguez's base-offense level at 26, with a three-level downward adjustment for acceptance of responsibility pursuant to section 3E1.1(b) of the United States Sentencing Guidelines (U.S.S.G. or Guidelines), lowering his offense level to 23. His Criminal History Category was I. Given the adjustments and Rodriguez's criminal history, the PSR recommended a Guidelines range of 46-57 months. The offense, however, by statute carries a mandatory minimum sentence of 60 months'

imprisonment. 21 U.S.C. § 841(b)(1)(B)(ii). In his initial sentencing memorandum filed on June 10, 2009, Rodriguez argued for a "sentence below the statutory minimum sentence" because "[he] has met the five requirements of the safety[-]valve provision." Def.'s Mem. in Aid of Sentencing at 2-3, *United States v. Rodriguez*, Cr. No. 08-344 (D.D.C. June 10, 2009). The safety-valve provision, 18 U.S.C. § 3553(f), incorporated into the Guidelines at section 5C1.2, permits the district court to impose a sentence below the statutory minimum if it finds:

> (1) the defendant does not have more than 1 criminal history point . . . ;

> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

> (3) the offense did not result in death or serious bodily injury to any person;

> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense . . . and was not engaged in a continuing criminal enterprise . . . ; and

> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not

> preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f).[1] In response, the Government argued that, while Rodriguez met the first four requirements, he had failed to fully and truthfully debrief and thus was not entitled to safety-valve relief. Gov't's Mem. in Aid of Sentencing at 4-8, *United States v. Rodriguez*, Cr. No. 08-344 (D.D.C. July 15, 2009). Specifically, the Government averred that Rodriguez withheld information regarding Gumesindo Maldunado (Maldunado), who was also arrested at the scene of the crime and who, the MPD believed, was Rodriguez's supplier.[2]

Because of the safety-valve dispute, the district court set an evidentiary hearing for July 28, 2009 to determine whether Rodriguez had in fact truthfully disclosed all information and evidence to the Government. During the hearing, Rodriguez testified that Maldunado had nothing to do with the drug deal. Rodriguez explained that Maldunado was his boss in a landscaping business and had followed Rodriguez to the parking lot so that Rodriguez could collect money from a friend and then follow Maldunado to a job site immediately thereafter. Rodriguez said that Maldunado had no idea that Rodriguez had entered the CS's car to sell cocaine.

---

[1]   For a drug offender like Rodriguez, the provision carries another important benefit—namely, the relevant drug guideline (U.S.S.G. 2D1.1(b)(16)) grants a defendant who meets the safety valve requirements a two-point decrease in the offense level.

[2]   On the day of the arrest, Maldunado, who was driving a Nissan Altima, followed Rodriguez's work truck into the parking lot. Maldunado parked the car almost directly behind the CS's car. He then exited his vehicle and paced behind the CS's car during the drug deal until he was arrested by MPD officers.

The Government presented testimony from MPD Detective Erick Alvarado (Alvarado) and Officer Derrick Starliper (Starliper) which cast doubt on the veracity of Rodriguez's testimony. Alvarado and Starliper both testified that Rodriguez had told the CS that his cocaine supplier would accompany him to the sale because the supplier did not trust Rodriguez with such a large sum of money. Both officers further testified that Maldunado had exited his car and paced behind the CS's car while Rodriguez was inside. Starliper also testified that MPD officers recovered a loaded pistol and approximately $4,000 in cash from Maldunado's vehicle on the day of his arrest.

The district court credited the officers' description of Maldunado's conduct: "I think that all of the circumstances leading up to the arrest suggest that Mr. Maldunado was there to make sure . . . that Mr. Rodriguez didn't run off with his drugs and . . . that he receive the [money]." Tr. of Sentencing at 62, *United States v. Rodriguez*, Cr. No. 08-344 (D.D.C. July 28, 2009). It then found that Rodriguez had not fully and truthfully debriefed and was not entitled to safety-valve relief. It further suggested that an increase in the offense level for obstruction of justice pursuant to U.S.S.G. § 3C1.1 might be warranted given Rodriguez's false testimony during the sentencing hearing and asked both parties to submit supplemental sentencing memoranda on the obstruction of justice issue.

On August 12, 2009, the Probation Office prepared a revised PSR, recommending a two-point increase in the offense level and raising the applicable Guidelines range to 60-71 months based on Rodriguez's obstruction of justice during the safety-valve hearing. *See* U.S.S.G. § 3C1.1.[3] The

---

[3] The notes to this section state that the "adjustment applies if the defendant's obstructive conduct . . . occurred with respect to the

Government filed a supplemental sentencing memorandum, arguing that, in light of Rodriguez's false testimony, he should also lose the acceptance of responsibility decrease. According to the Government, then, his adjusted Guidelines range should be 78-97 months. Rodriguez responded that the obstruction of justice increase should not apply but that the acceptance of responsibility decrease should so that the Guidelines range should be 46-57 months.

At some point thereafter, Rodriguez met with the Government for a final debriefing. Although neither the exact date nor the content of the discussion is in the record, the meeting prompted the Government to submit an additional supplemental sentencing memorandum to the court. In the memorandum, the Government explained:

> [A]fter more than nine months of dissembling, the [D]efendant *finally debriefed truthfully with law enforcement authorities*. Though this information was not particularly useful for law enforcement purposes, the [D]efendant does deserve some credit for finally *being truthful*.

Gov't's Second Supplemental Mem. in Aid of Sentencing at 2, *United States v. Rodriguez*, Cr. No. 08-344 (D.D.C. Nov. 10, 2009) (emphases added). The Government further noted that Rodriguez was eligible for a so-called *Smith* departure because of his status as a deportable alien—reducing his

---

investigation, prosecution, or sentencing of the defendant's instant offense of conviction." U.S.S.G. § 3C1.1 cmt. n.1 (2009). Covered conduct includes "providing materially false information to a judge or magistrate." *Id.* § 3C1.1 cmt. n.4(f). Information is considered "material" when "if believed, [it] would tend to influence or affect the issue under determination." *Id.* § 3C1.1 cmt. n.5.

sentence by "up to six months of incarceration." *Id.*[4] Given Rodriguez's "truthful, albeit late, debriefing" and his "status as a deportable alien," the Government asked for "a period of incarceration of 72 months." *Id.*

On November 17, 2009, the district court held a hearing at which it appeared ready to impose sentence. *See* Minute Order, *United States v. Rodriguez*, Cr. No. 08-344 (D.D.C. Nov. 17, 2009) ("sentencing scheduled for this day [] rescheduled"). The court first asked the Government if Rodriguez had been "successfully debriefed." *See* Hearing at 4, *United States v. Rodriguez*, Cr. No. 08-344 (D.D.C. Nov. 17, 2009). The Government responded: "I wouldn't say he successfully debriefed. I think he finally accepted responsibility and came clean *about all aspects of the transaction.*" *Id.* (emphasis added). The district court then asked the Government its position on the acceptance of responsibility adjustment. The Government opposed the adjustment "in light of the perjured testimony during the sentencing hearing." *Id.* Nonetheless, given that Rodriguez finally "came clean" and was eligible for a *Smith* departure, the Government recommended a sentence of 72 months—the bottom end of the 78-97 range it had originally proposed with the six-month downward departure as a deportable alien. The court then discovered that Rodriguez had not yet read the revised PSR because it was provided to him in English, which he could neither speak nor read. The court elected to postpone sentencing so that the PSR could be translated into Spanish, Rodriguez's native language.

---

[4] *See United States v. Smith*, 27 F.3d 649, 655 (D.C. Cir. 1994) (because deportable alien is not eligible for supervised release and other programs under 18 U.S.C. § 3624(c), court may depart downward to account for "fortuitous increase in the severity of his sentence").

On February 19, 2010, the district court held a long-postponed sentencing hearing. At the hearing, the Government renewed its request for a 72-month sentence. It explained that it had held four debriefing sessions with Rodriguez. During the first three sessions, Rodriguez had repeatedly lied to the Government. But shortly after the July 28, 2009 safety-valve hearing, Rodriguez told the Government that "he wanted to come clean and he wanted to tell [] the truth." Sentencing Hearing at 6-7, *United States v. Rodriguez*, Cr. No. 08-344 (D.D.C. Feb. 19, 2010). At that time, "[w]e had a fourth debriefing where we believe he was more forthcoming but he still was not providing us the information we felt was credible and necessary [so] that we could use him as a cooperator." *Id.* at 7. The Government recognized Rodriguez was a deportable alien eligible for a *Smith* departure but argued that his eleventh-hour truthful debriefing and the *Smith* departure should be balanced against Rodriguez's perjury during the safety-valve hearing and his failure to accept responsibility for his crime.

Rodriguez's counsel countered that, although Rodriguez had been "less than fully forthcoming in earlier debriefings," he had done so out of concern for his safety and that of his family. *Id.* The lawyer emphasized that Rodriguez was ready and willing to cooperate further with the Government: "[A]t this rather late time, for whatever it's worth, [Rodriguez is] willing to come forward with further debriefing perhaps [to] try to undo some of the less than full debriefing that he was party to in the past." *Id.* at 7-8. The Court then asked for Rodriguez's allocution and Rodriguez declared:

> First, I would like to apologize to you and to everyone present, to the American government for having made this mistake . . . . And on my part, I wanted to cooperate but perhaps it was a bit too late, but . . . I couldn't do that because

> there were people who were very close to me and one always has the fear that something might happen to you and now I know that it's too late. There's nothing to be done about it, but as I said to the prosecutor, if my help is required, I am here, and that's all.

*Id.* at 13.

With no mention of the safety valve or corresponding two-level decrease under U.S.S.G. § 2D1.1(b)(16), the court imposed Rodriguez's sentence. It found that Rodriguez had provided "materially false" testimony on a "critical issue" during the July 28, 2009 safety-valve hearing and that his offense level should be increased two points for obstruction of justice. *Id.* at 15. Because of Rodriguez's less than truthful debriefings as well as his testimony during the safety-valve hearing, the district court denied the acceptance of responsibility decrease. It thus adopted the Government's suggested 78-97 month Guidelines range, applied the six-month *Smith* departure and sentenced Rodriguez to 72 months' imprisonment.

Rodriguez now appeals.

## II.

Rodriguez raises four arguments on appeal. First, Rodriguez argues that his lawyer's failure to argue for safety-valve relief amounts to ineffective assistance of counsel in violation of his Sixth Amendment right. Second, he claims the district court erred when it failed to raise and apply the safety-valve provision *sua sponte* notwithstanding the court had considered and rejected it at the July 28, 2009 safety-valve hearing. Third, Rodriguez argues that his sentence is procedurally defective because the court failed to adequately outline the applicable U.S.S.G range before imposing sentence and because it failed to adequately explain the basis

of its decision. Finally, he argues that the district court erred by not decreasing his offense level for acceptance of responsibility.

We address first whether Rodriguez's lawyer's failure to raise the safety valve issue at the February 19, 2010 sentencing hearing constitutes ineffective assistance of counsel. We review an ineffective assistance of counsel claim under the two-part test set out by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To succeed on such a claim, Rodriguez must show: "(1) 'that [his] counsel's performance was deficient,' and (2) 'that the deficient performance prejudiced the defense.' " *United States v. Shabban*, 612 F.3d 693, 697 (D.C. Cir. 2010) (quoting *Strickland*, 466 U.S. at 687). "Deficient" means that " ' "counsel's representation fell below an objective standard of reasonableness." ' " *United States v. Goodwin*, 594 F.3d 1, 4 (D.C. Cir. 2010) (quoting *Smith v. Spisak*, 130 S.Ct. 676, 685 (2010) (quoting *Strickland*, 466 U.S. at 688)). "Prejudice" means " 'that there is a "reasonable probability that, but for counsel's . . . errors, the result of the proceeding would have been different." ' " *Id.* (quoting *Smith*, 130 S.Ct. at 685 (quoting *Strickland*, 466 U.S. at 688)). Ordinarily, an ineffective assistance of counsel claim cannot be resolved on direct appeal; there is, however, an exception "in those rare circumstances where the record is so clear that remand is unnecessary." *United States v. Soto*, 132 F.3d 56, 59 (D.C. Cir. 1997); *see also United States v. Fennell*, 53 F.3d 1296, 1303-04 (D.C. Cir. 1995) (ineffective assistance of counsel claim may be decided on appeal "when the trial record alone conclusively shows that the defendant is entitled to no relief . . . [or] when the trial record conclusively shows the contrary"). On our review, the record conclusively shows that Rodriguez's lawyer's failure to reassert Rodriguez's eligibility for safety-valve relief after Rodriguez truthfully debriefed constitutes ineffective assistance of counsel.

As a threshold matter, it seems plain to us that Rodriguez met all five elements of the safety-valve provision by the time of the February 2010 sentencing hearing. The Government concedes that Rodriguez satisfied the first four criteria for safety-valve relief. Gov't's Mem. in Aid of Sentencing at 5, *United States v. Rodriguez*, Cr. No. 08-344 (D.D.C. July 15, 2009) ("The defendant meets the first four requirements of the safety-valve provision, and thus, it is the fifth requirement which is at issue in this case."). The fifth criterion requires that:

> *not later than the time of the sentencing hearing*, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan.

18 U.S.C. § 3553(f)(5) (emphasis added). According to the Government's open-court admission during the November 17, 2009 hearing, Rodriguez eventually "came clean about *all aspects of the transaction*." Hearing at 4, *United States v. Rodriguez*, Cr. No. 08-344 (D.D.C. Nov. 17, 2009) (emphasis added). In its second supplemental sentencing memorandum filed shortly before the November hearing, the Government noted repeatedly that Rodriguez had fully and truthfully debriefed: (1) "the defendant . . . debriefed truthfully with law enforcement authorities"; (2) "defendant does deserve some credit for finally being truthful"; and (3) defendant should receive some downward adjustment "[i]n light of . . . the defendant's truthful, albeit late, debriefing." Gov't's Second Supplemental Mem. in Aid of Sentencing at 2, *United States v. Rodriguez*, Cr. No. 08-344 (D.D.C. Nov. 10, 2009). Accordingly, "not later than the [February 2010] sentencing hearing," Rodriguez had "truthfully provided . . . . all

information and evidence [he] ha[d] concerning the offense," 18 U.S.C. § 3553(f)(5), and had therefore satisfied the final element of the safety-valve provision.

We are not persuaded by the Government's attempt to use the statements of Rodriguez and his lawyer during the February 2010 hearing to suggest that Rodriguez was continuing to withhold information from the Government. *See* Appellee's Br. 28 ("Appellant's response to the prosecutor during the sentencing hearing simply underscores the fact that he had failed to provide the government with complete information about his offense."). The statements were made in arguing for Rodriguez's eligibility for either an acceptance of responsibility decrease or substantial assistance reduction under the Guidelines.[5] Both Rodriguez and his lawyer acknowledged that Rodriguez's past lies could affect his eligibility for both.[6] But neither Rodriguez's lawyer nor the Government tied Rodriguez's past conduct to the safety-valve provision. The fact that Rodriguez waited "until the last minute" to provide the information or that he was "tardy" in doing so does not preclude him from obtaining safety-valve relief. *United States v. Tournier*, 171 F.3d 645, 647 (8th Cir. 1999). The provision does not distinguish "between defendants who provide the authorities only with truthful information and those who provide false information before finally telling the truth." *United States v. Schreiber*, 191 F.3d 103, 106 (2d Cir. 1999). It expressly states that a defendant

---

[5]     U.S.S.G. § 5K1.1 permits, on the Government's motion and in the court's discretion, a reduction for certain defendants who have provided "substantial assistance" to the Government.

[6]     As the Government argued, although Rodriguez had come clean about the transaction, he was no longer "credible" and thus could not be used as a "cooperator." Sentencing Hearing at 6-7, *United States v. Rodriguez*, Cr. No. 08-344 (D.D.C. Feb. 19, 2010).

must truthfully provide all information "not later than the time of the sentencing hearing." 18 U.S.C. § 3553(f)(5); U.S.S.G. § 5C1.2(a)(5). Nor does it matter whether the information provided is particularly useful. *See, e.g.*, *United States v. Gales*, 603 F.3d 49, 52 (D.C. Cir. 2010) (safety valve available to defendant who does "not possess information of substantial assistance"). When Rodriguez "came clean about all aspects of the transaction," he met all five elements of the safety-valve provision.

It is the defendant's burden to establish safety-valve eligibility, *see United States v. Mathis*, 216 F.3d 18, 29 (D.C. Cir. 2000) (defendant "bears the burden to establish by a preponderance of the evidence that he is entitled to safety[-]valve relief"); *United States v. Stephenson*, 452 F.3d 1173, 1179 (10th Cir. 2006) ("The defendant bears the burden of proving by a preponderance of the evidence that he is entitled to the safety-valve adjustment."); *United States v. Montanez*, 82 F.3d 520, 523 (1st Cir. 1996) ("It is up to the defendant to persuade the district court that he has 'truthfully provided' the required information and evidence to the government."), and Rodriguez's lawyer failed to request safety-valve relief after Rodriguez truthfully debriefed. Indeed, Rodriguez's lawyer suggested that the district court had rejected the safety valve and that it was off the table. *See* Sentencing Hearing at 5, *United States v. Rodriguez*, Cr. No. 08-344 (D.D.C. Feb. 19, 2010) ("[T]his is a case that's had a sort of long history . . . post-plea. . . . [T]here was a safety valve issue. The Court had a hearing on that and found Mr. Rodriguez not to be credible on that point."). Familiarity with the Guidelines is " 'a necessity for counsel who seek to give effective representation.' " *United States v. Gaviria*, 116 F.3d 1498, 1512 (D.C. Cir. 1997) (per curiam) (quoting *United States v. Day*, 969 F.2d 39, 43 (3d Cir. 1992). When a lawyer fails to raise an applicable provision of the Guidelines, he fails to provide effective assistance. *Soto*, 132 F.3d at 59 ("Whether

lawyers get the Guidelines wrong by misinterpreting the implication of a particular provision . . . or by failing altogether to raise a potentially helpful provision . . . such drastic missteps clearly satisfy *Strickland*'s first test: They amount to errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." (internal quotation marks and citation omitted)); *see, e.g.*, *Bellizia v. Fla. Dep't of Corr.*, 614 F.3d 1326, 1329-30 (11th Cir. 2010) (failure to make argument that would have resulted in below minimum sentence constitutes deficient performance). Rodriguez's lawyer was (or should have been) aware that his client had fully and truthfully debriefed and there was no "objectively reasonable" or strategic reason not to argue its applicability.

Moreover, given the applicability of the safety-valve provision, we believe there is at least a "reasonable probability" that, had Rodriguez's lawyer raised it, Rodriguez would have received a lower sentence. *Strickland,* 466 U.S. at 694. Our sister circuits have held that once a defendant satisfies the five requirements, the "district court has no discretion to withhold its application," *United States v. Franco-Lopez*, 312 F.3d 984, 994 (9th Cir. 2002), and that the safety-valve provision is "mandatory," *United States v. Quirante*, 486 F.3d 1273, 1275 (11th Cir. 2007) ("The safety-valve provision . . . is not discretionary. Its plain terms are plainly mandatory.").

The post-*Booker* sentencing scheme, which requires the district court to determine the Guidelines range before exercising its discretion, *Gall v. United States*, 552 U.S. 38, 51 (2007), presupposes that the appropriate range is an important guide in the exercise of that discretion. Here, Rodriguez's offense level adjustment under the safety-valve provision and corresponding two-point decrease under the drug guideline would reduce his Guidelines range from 78-97

months to 63-78 months. Although Rodriguez received a sentence of 72 months' imprisonment—the middle of the 63-78 months range—the Government's previous recommendation had been for a sentence at the bottom of the original 78-97 months range (and, in fact, six months below that due to the *Smith* departure). The court itself noted that it "normally" reduces the sentence of a deportable alien by six months under *Smith.* Sentencing Hearing at 10, *United States v. Rodriguez*, Cr. No. 08-344 (D.D.C. Feb. 19, 2010) ("[G]iving consideration to the *Smith* departure, six months is something I normally do."). On this record, we believe there is a "reasonable probability" that Rodriguez would have received a lower sentence had his Guidelines range factored in the safety valve. *Strickland*, 466 U.S. at 694. A "reasonable probability" is all Rodriguez "need show" in order to establish prejudice. *United States v. Weathers*, 493 F.3d 229, 238 (D.C. Cir. 2007).

We next turn to Rodriguez's claim that the district court erroneously denied Rodriguez an acceptance of responsibility decrease. *See* Appellant's Br. 26. Because Rodriguez preserved this claim at the sentencing hearing, our review is for abuse of discretion. *See Gall*, 552 U.S. at 46 (issue raised at sentencing reviewed for abuse of discretion). We review a purely legal question *de novo* and the district court's findings of fact for clear error, according "due deference" to the district court's application of the Guidelines to the facts. *Id.* at 51; *see also United States v. Berkeley*, 567 F.3d 703, 711 (D.C. Cir. 2009) ("Because the sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility[,] . . . the determination of the sentencing judge is entitled to great deference on review." (internal quotation marks and citation omitted, alterations in original)).

Section 3E1.1(a) of the Guidelines provides for a two-point offense level decrease if "the defendant clearly

demonstrates acceptance of responsibility for his offense." If, however, the defendant obstructed justice, he is entitled to an acceptance of responsibility adjustment in an "extraordinary case[]" only. *See* U.S.S.G. § 3E1.1, cmt. n.4. Here, neither party disputes that Rodriguez obstructed justice by testifying falsely during the July 28, 2009 safety-valve hearing but Rodriguez argues that his is an "extraordinary case." We disagree.

That Rodriguez finally came clean in his fourth debriefing does not necessarily mean that he accepted responsibility for his role in the crime. Rodriguez may have decided to cooperate with the Government to get a sentencing benefit without fully accepting responsibility for the crime. *See, e.g.*, *United States v. Galbraith*, 200 F.3d 1006, 1016 (7th Cir. 2000) (defendant who testified falsely before finally pleading guilty at "eleventh hour" did not accept responsibility). Additionally, the Government's passing statement during the November 2009 hearing that Rodriguez "finally accepted responsibility" for his crime is not dispositive. Hearing at 4, *United States v. Rodriguez*, Cr. No. 08-344 (D.D.C. Nov. 17, 2009). Immediately after making this statement, the Government argued *against* awarding Rodriguez an acceptance of responsibility decrease. *See id.* at 4-5 (Court: "And you're still seeking a forfeiture of his acceptance of responsibility adjustment because of the testimony I didn't credit." Government: "Yes, Your Honor, the earlier sentencing."). And during the February 2010 sentencing hearing, the Government reminded the court that Rodriguez had repeatedly lied and dissembled for months before finally agreeing to cooperate, supporting its argument that Rodriguez had come clean only in an effort to obtain a sentencing advantage. It was well within the district court's discretion to agree.

For the foregoing reasons, we remand to the district court so that it can reconsider Rodriguez's sentence in light of the applicability of the safety-valve provision set forth in 18 U.S.C. § 3553(f) and U.S.S.G § 5C1.2.[7]

*So ordered.*

---

[7] Because we conclude that Rodriguez's lawyer rendered ineffective assistance by failing to request safety-valve relief, we do not reach Rodriguez's claims that the district court should have applied the safety valve *sua sponte* or that his sentence was procedurally defective.