# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued October 12, 2012       Decided November 9, 2012

No. 09-3094

UNITED STATES OF AMERICA,
APPELLEE

v.

BYRON LAMONT MCDADE, ALSO KNOWN AS BARRY,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:00-cr-00105-4)

*Robert S. Becker*, appointed by the court, argued the cause and filed the briefs for appellant.

*James A. Petkun*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen, Jr.*, U.S. Attorney, and *Roy W. McLeese* III, *John P. Mannarino*, and *John P. Dominguez*, Assistant U.S. Attorneys. *Elizabeth Trosman*, Assistant U.S. Attorney, entered an appearance.

Before: ROGERS, BROWN and KAVANAUGH, *Circuit Judges*.

Opinion for the Court by *Circuit Judge* ROGERS.

ROGERS, *Circuit Judge*: Upon failing on direct appeal to obtain reversal of his conviction by a jury of one count of conspiracy to distribute five kilograms or more of cocaine and aiding and abetting, Byron L. McDade filed a motion challenging his sentence pursuant to 28 U.S.C. § 2255. The motion was filed within the one-year limitation of § 2255(f), but did not include his claim of ineffective assistance of trial counsel. The government therefore maintains this later-filed claim is not properly before the court. Guided by *Holland v. Florida*, – U.S. –, 130 S. Ct. 2549 (2010), interpreting 28 U.S.C. § 2244, we join our sister circuits in holding that equitable tolling applies to § 2255 motions. Here, the later-filed claim is properly before the court because McDade was diligent in researching his claim and post-conviction counsel[1] acknowledged that the failure to include the ineffective assistance claim in the timely § 2255 motion was due solely to his own error. On the merits, however, we conclude that McDade has failed to meet his burden under *Strickland v. Washington,* 466 U.S. 668 (1984), to show that he was denied his Sixth Amendment right to the effective assistance of trial counsel. Whether or not trial counsel's decision not to interview potential impeachment witnesses was objectively reasonable, any failures were not prejudicial because there is no reasonable probability that the outcome of the trial would have been different absent the errors. Accordingly, we affirm.

## I.

A grand jury issued a superceding indictment on August 9, 2001, charging McDade with one count of conspiracy to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846. A jury found him guilty after a 10-day trial. The

---

[1] McDade is represented by new counsel on appeal.

district court sentenced him, in accord with the then mandatory Sentencing Guidelines, to 324 months' imprisonment.[2]

The government's evidence at trial consisted primarily of testimony from McDade's cocaine supplier, individuals who purchased cocaine from McDade, and minimal wire tap evidence of conversations between McDade and his alleged cocaine supplier, Phyllis Webster. The evidence included testimony that Webster received cocaine from Cornelius Singleton and that McDade in turn sold this cocaine for Webster beginning in 1998. Webster testified that in 1998 she chose McDade to take over her cocaine distribution and that she also provided him with cocaine at a discounted rate to distribute to his own customers. Ernest Minder testified that McDade received his cocaine from Webster and sold cocaine to Minder and others. The taped telephone conversations between Webster and McDade tended to corroborate Webster's testimony, for example that McDade kept the records of his drug sales on the backs of lottery tickets. Because Webster and McDade spoke in code, however, the tapes did not identify the kind of cooperative endeavor in which they were engaged. The government also presented evidence that McDade had fled when his employer told him that an FBI agent wanted to speak with him, and later hung up when the FBI contacted him by phone; McDade turned himself in seven months later.

McDade presented no witnesses and did not testify himself. Instead, he relied on cross-examination of the government's witnesses, which elicited incriminating statements, including admissions that they had violated the conditions of their

---

[2] At sentencing the district court observed that McDade's sentence under the mandatory Sentencing Guidelines was "much more than sufficiently punitive." Judgment June 3, 2002 at 6.

probation or their cooperation agreements with law enforcement and were testifying with the expectation of receiving reduced sentences.

This court affirmed McDade's direct appeal of his conviction, *see United States v. McDade*, No. 02-3054, 2003 WL 22204126 (D.C. Cir. Sept. 16, 2003), rejecting his contentions that there was insufficient evidence to show a single conspiracy, that there was reversible error as a result of the prosecutor's rebuttal closing argument, and that in sentencing the district court erred in finding that he was a manager or supervisor pursuant to § 3B1.1 of the Sentencing Guidelines. The Supreme Court denied his petition for a writ of certiorari on March 8, 2004. *See McDade v. United States*, 541 U.S. 911.

On March 7, 2005, McDade, through new counsel, filed a "motion to vacate, set aside, or correct the sentence" pursuant to 28 U.S.C. § 2255. Despite McDade's requests to counsel that the motion include a claim of ineffective assistance of trial counsel for failure to interview potential impeachment witnesses, counsel inadvertently omitted this claim. On April 8, 2005, after the § 2255 limitation period had run, counsel filed an amended motion along with a supporting memorandum and affidavits. The district court denied McDade's § 2255 motion with regard to two claims not relevant to this appeal, and ordered supplemental briefing with regard to the timeliness of his ineffective assistance of trial counsel claim. Despite the government's objection that this claim was time-barred, the district court stated that it was "loathe to dispose of [McDade's] claim of ineffective assistance of trial counsel on [the timeliness] basis alone when [McDade] is serving a very lengthy sentence (324 months) and when his amended motion, if indeed it was untimely, was no more than a month late." *United States v. McDade*, No. cr-00-0105, No. cv-05-0555, at *8 (D.D.C. Jan. 5, 2006).

At an evidentiary hearing on January 15, 2008, the district court heard from McDade, his trial counsel, and one of the potential impeachment witnesses, Kent Sebastian Robinson, who McDade argued his trial counsel had unreasonably failed to interview in preparing for trial. McDade testified about the information he had given to trial counsel regarding three impeachment witnesses, and trial counsel testified as to his theory of the case, his trial strategy, and his reasons for not calling or interviewing Rodney Douglas, David Flowers, and Robinson as potential impeachment witnesses. In a February 28, 2005 affidavit accompanying McDade's amended § 2255 motion, Flowers stated that he encountered Ernest Minder while Minder was in protective custody, and that Minder had told him that the government wanted Minder to testify against McDade, but that Minder did not know McDade. Douglas, in his affidavit of November 2, 2004, stated that Minder had also told Douglas that he "did not know [McDade] like that." Because McDade knew Minder and it would be easy to "explain away" Minder's statement denying in essence that he was cooperating with the government, trial counsel explained that he had determined that the testimony of Douglas would not be helpful. *See United States v. McDade*, 639 F. Supp. 2d 77, 83 (D.D.C. 2009). He had no recollection or notation of any conversations about Flowers.

Robinson testified that although he could have offered testimony during McDade's trial that contradicted the testimony of Phyllis Webster that Robinson had introduced her to McDade, he probably would have invoked his Fifth Amendment privilege against self-incrimination with regard to all other questions. McDade testified that Robinson would have refuted Webster's testimony that she had sold drugs to McDade by way of Robinson. Trial counsel testified that he had no recollection McDade had told him this, and that he would have remembered this if he had; trial counsel's pre-trial notes indicated that

McDade did not want to call Robinson as a witness, and he had no recollection McDade had changed his mind during trial. Trial counsel proceeded to explain that, based on his conversations with McDade and the prosecutor, who wanted McDade to testify against Robinson, he had concluded that calling Robinson as a defense witness, whom counsel suspected the government could prove was a drug dealer and had evidence to impeach any testimony he might offer, would involve risks to McDade that outweighed the potential impeachment value of his testimony. *See id.* at 84. As the district court recounted, his trial strategy was to "show at trial that all of the government's witnesses were 'criminals' and 'scoundrels' who have had a history of 'possessing weapons' and dealing drugs and were testifying against the defendant only because they had 'cut deals seeking reduced sentences,'" *Id.* at 82, whereas McDade was "a hard working man" with a "wife" and "three children" who had a "contract with Medicaid . . . transport[ing] elderly, sick and mentally handicapped people to hospitals" and worked as a trash collector for "Waste Management," Tr. Feb. 4, 2002 at 597. Calling Robinson might open up "a whole new dimension," Tr. Jan. 15, 2008 at 62, emphasizing McDade's relationship with Robinson, and so undermine the theory of the case he was presenting to the jury while not providing "anything that would have been particularly substantial." *Id*. at 63.

The district court denied McDade's § 2255 motion, finding that trial counsel's decision not to call Douglas, Flowers, and Robinson as impeachment witnesses was "not objectively unreasonable, nor was the decision not to interview Douglas and Flowers." *McDade*, 639 F. Supp. at 82. In view of McDade's assertions as to Robinson's potential testimony, however, the district court concluded it was "*objectively unreasonable*" for trial counsel "not to interview Robinson," *id*. at 82 (emphasis in original), before deciding whether to call him as a witness. Nevertheless, the district court found that McDade had failed to

show prejudice under the second prong of *Strickland*'s ineffective assistance of counsel test because trial counsel's failure to interview Robinson "did not prejudice the outcome of the trial," *id.* at 85, and therefore McDade's ineffective assistance of counsel claim was without merit. The district court considered Robinson's criminal record, the minimal effect his testimony could have had on Webster's credibility, and the "dubious proposition" that it would even have permitted Robinson to testify given his statements that he would have asserted his Fifth Amendment privilege with regard to all but one question. *Id.* at 84–85. Because the district court resolved the motion on the question of prejudice, it declined to analyze whether the ineffective assistance of trial counsel claim was time-barred.[3]

## II.

On appeal, McDade contends that the district court's conclusion that trial counsel made an objectively reasonable decision not to interview Douglas and Flowers was based on assumptions about the value of their testimony that are unsupported in the record. Trial counsel's failure to interview Douglas and Flowers, he maintains, was as objectively unreasonable as counsel's decision not to interview Robinson. In McDade's view, a proper evaluation of the potential testimony of these witnesses makes evident that but for counsel's error there is a reasonable probability of a different result at trial. The government disagrees, maintaining McDade

---

[3] Additionally, in denying the § 2255 motion the district court stated that McDade's sentence was "disproportionate," recommended that the Director of the Federal Bureau of Prisons reduce his sentence, and urged the President to "consider executive clemency for Mr. McDade" and "reduce [his] sentence to fifteen years in prison followed by a substituted term of supervised release." *Id.* at 86.

8

fails to meet his burden at each prong of the *Strickland* test because trial counsel made a reasonable tactical decision after considering the information provided by McDade and by the government not to investigate or call the potential impeachment witnesses, and, in any event, McDade has failed to show any prejudice from trial counsel's purported deficiency.  As a threshold matter, however, the government renewed its objection that the § 2255 claim of ineffective assistance of counsel was untimely filed and is thus not properly before the court.  We address that question first.

**A.**

28 U.S.C. § 2255(f) sets a one-year limitation for filing a motion pursuant to this section and establishes that the limitation will run from the latest of four enumerated circumstances. Unlike all of our sister circuits, this court has yet to decide whether equitable tolling applies to a motion filed pursuant to § 2255.[4]  In *United States v. Cicero*, 214 F.3d 199, 203 (D.C. Cir. 2000), the court implied that equitable tolling under § 2255 would be available only in "extraordinary circumstance."  Since then the Supreme Court has held that equitable tolling applies to the time limitation in 28 U.S.C. § 2244, a nearly identical

---

[4] *See Ramos-Martinez v. United States*, 638 F.3d 315, 318 (1st Cir. 2011); *Green v. United States*, 260 F.3d 78, 82 (2d Cir. 2001); *Miller v. New Jersey State Dep't of Corrections*, 145 F.3d 616, 619 n.1 (3d Cir. 1998); *United States v. Prescott*, 221 F.3d 686, 688 (4th Cir. 2000); *United States v. Petty*, 530 F.3d 361, 364 (5th Cir. 2008); *Solomon v. United States*, 467 F.3d 928, 929 (6th Cir. 2006); *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000); *Moore v. United States*, 173 F.3d 1131, 1134 (8th Cir. 1999); *United States v. Buckles*, 647 F. 3d 883, 889 (9th Cir. 2011); *United States v. Gabaldon*, 522 F.3d 1121, 1124 (10th Cir. 2008); *Sandvik v. United States*, 177 F.3d 1269, 1271–72 (11th Cir. 1999) (per curiam).

provision. *See Holland*, – U.S. –, 130 S. Ct. at 2560. Sections 2244 and 2255 were enacted as part of the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, §§ 101, 105, 110 Stat. 1214, 1217, 1220 (1996), and the text of both sections is similar. *Compare* 28 U.S.C. § 2244(d), *with* 28 U.S.C. § 2255(f).[5]

In *Holland*, the Court held that the limitations period in § 2244(d) was not jurisdictional and reaffirmed that a non-jurisdictional federal statute of limitations is "normally subject to a rebuttable presumption in *favor* of equitable tolling." 130 S. Ct. at 2560 (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990)) (emphasis in original) (internal quotations omitted). The Court noted that equitable principles have traditionally governed the substantive law of habeas corpus. *Id*. (citing *Munaf v. Geren*, 553 U.S. 674, 693 (2008)). The Court also noted that "[t]he presumption's strength is yet further reinforced by the fact that Congress enacted AEDPA after this Court decided *Irwin* and therefore was likely aware that courts, when interpreting AEDPA's timing provisions, would apply the presumption." *Id.* at 2561. Further, the Court distinguished the text in AEDPA's limitation provision from other statutes in which the presumption had been overcome by the use of more emphatic and highly detailed and technical

---

[5] Section 2244(d)(1) provides: "A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." It proceeds to define when the limitation period starts to run. 28 U.S.C. § 2244(d)(2) provides: "The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection." Section 2255(f) provides: "A 1-year period of limitation shall apply to a motion under this section." It proceeds to define when the limitation period starts to run.

language or by a limitations period that was unusually generous. *See id.* (citing *United States v. Brockamp*, 519 U.S. 347 (1997), and *United States v. Beggerly*, 524 U.S. 38 (1998)). The fact that AEDPA was silent as to equitable tolling but contained a provision expressly referring to tolling during state collateral review proceedings was "easily explained," without rebutting the presumption in favor of equitable tolling, by the fact a petitioner cannot bring a federal habeas corpus claim until after exhausting state remedies, making it necessary for Congress to explain how the limitations statute would account for the time during which the state proceedings were pending. *Id*. at 2562. For these reasons the Court "conclud[ed] that neither AEDPA's textual characteristics nor the statute's basic purposes 'rebut' the basic presumption set forth in *Irwin*." *Id*. The Court reaffirmed that a petitioner is entitled to equitable tolling only if "he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)) (internal quotations omitted).

We hold, in view of *Holland*, that equitable tolling applies to motions filed pursuant to § 2255. The textual similarity of § 2244(d) and § 2255(f) and their concurrent enactment by Congress as part of AEDPA indicate that the Court's reasoning is no less applicable to § 2255 than to § 2244. Further, because § 2255 motions are in the nature of a federal habeas petition, the equitable principles discussed in *Holland* with regard to § 2244 apply with equal force to § 2255. Indeed, the government appears to concede that equitable tolling applies to § 2255 motions, *see* Appellee's Br. at 43–44, maintaining only that McDade merely offered garden variety claims of excusable neglect to justify the untimeliness of his effective assistance of trial counsel claim.

The facts regarding the filing of McDade's amended § 2255 motion are uncontested. A remand is therefore unnecessary and we proceed to address whether equitable tolling applies to his ineffective assistance of trial counsel claim. As the Supreme Court has held, attorney error alone in calculating a filing deadline generally does not amount to extraordinary circumstances. *See Lawrence v. Florida*, 549 U.S. 327, 336 (2007). Moreover, the Court observed in *Irwin* that courts have "typically extended equitable relief only sparingly." 498 U.S. at 96. Still, the Court observed approvingly, courts have "allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or . . . been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id*. It cautioned that it has generally "been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights." *Id.*

The missed-deadline cases from this circuit are distinguishable from McDade's case. In *United States v. Pollard*, 416 F.3d 48, 54, 56 (D.C. Cir. 2005), a highly educated defendant who had served as an Intelligence Research Specialist in the U.S. Navy had done no legal research on his own into a possible § 2255 motion, and filed his second § 2255 motion approximately thirteen years after his sentencing. In *Cicero*, 214 F.3d at 204, the defendant waited until almost three years to file, having had several years prior to his run of misfortune to do so. By contrast, McDade's unusual level of diligence and the extraordinary nature of the situation is documented in letters before the court that he wrote to post-conviction counsel well before the § 2255 one-year deadline. McDade researched his claim and timely advised post-conviction counsel by letters of his wish to raise an ineffective assistance of trial counsel claim in challenging his sentence. McDade also gathered evidence

in support of his claim, obtaining separate affidavits from three potential impeachment witnesses regarding what they would have testified at his trial had they been called in his defense and forwarding them to counsel. In one of his letters he alerted counsel almost four months in advance that the one-year limitation would expire on March 8, 2005. Additionally, he requested that counsel forward him a draft of his § 2255 motion, which McDade claims counsel never did. Post-conviction counsel, who has acknowledged the omission was due solely to his own inadvertence, failed to heed McDade's requests until after the § 2255 deadline had passed. The amended motion including the ineffective assistance of trial counsel claim was filed only 30 days past the one-year limitations period. The circumstances in McDade's case are thus distinguishable from "garden variety" error cases that involve the failure of counsel and the defendant and counsel to properly calculate a deadline and the defendant's sitting on his hands.

McDade's diligence in pursuing his claim and his counsel's failure to abide by his requests demonstrate extraordinary circumstances warranting application of equitable tolling to his ineffective assistance of trial counsel claim in his amended § 2255 motion. That claim is, therefore, properly before the court.[6]

**B.**

To prevail on an ineffective assistance of counsel claim, McDade must show that counsel's errors did not meet the standard of "reasonableness under prevailing professional

---

[6] In view of our holding that equitable tolling applies to McDade's § 2255 motion, the court need not address the government's alternative argument that McDade's later-filed ineffective assistance of counsel claim would not be timely under the "relation back" standard of Rule 15(c) of the Federal Rules of Civil Procedure.

norms." *Strickland*, 466 U.S. at 688. When courts evaluate ineffectiveness claims, their "scrutiny of counsel's performance must be highly deferential." *Id.* at 689. Where the case involves a failure to investigate, the "particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691; *see id.* at 689. Even if trial counsel's decisions were unreasonable, however, McDade still must meet *Strickland*'s prejudice prong by showing that "the decision reached would reasonably likely have been different absent the errors." *Id.* at 696.

This court has "declined to fix the appropriate standard" for review of the mixed question of law and fact underlying denial of a § 2255 motion alleging ineffective assistance of counsel, not having encountered a case where reversal is merited even under the more searching *de novo* standard. *In re Sealed Case*, 488 F.3d 1011, 1016 (D.C. Cir. 2007); *see also United States v. Gwyn*, 481 F.3d 849, 853 (D.C. Cir. 2007); *United States v. Toms*, 396 F.3d 427, 432–33 (D.C. Cir. 2005).[7] Even assuming a standard that is favorable to McDade (*i.e.*, *de novo* review with regard to district court rulings against McDade and more deferential review of determinations in his favor) does not

---

[7] Other circuits apply a *de novo* standard of review. *See Familia-Consoro v. United States*, 160 F.3d 761, 765 (1st Cir. 1998); *Winkler v. Keane*, 7 F.3d 304, 308 (2d Cir. 1993); *United States v. Kauffman*, 109 F.3d 186, 187 (3d Cir. 1997); *United States v. Nicholson*, 611 F.3d 191, 205 (4th Cir. 2010); *United States v. Rivas-Lopez*, 678 F.3d 353, 356 (5th Cir. 2012); *Campbell v. United States*, 686 F.3d 353, 357 (6th Cir. 2012); *Spreitzer v. Peters*, 114 F.3d 1435, 1450 (7th Cir. 1997); *Nupdal v. United States*, 666 F.3d 1074, 1075 (8th Cir. 2012); *United States v. Manzo*, 675 F.3d 1204, 1209 (9th Cir. 2012); *United States v. Rushin*, 642 F.3d 1299, 1302 (10th Cir. 2011); *Gordon v. United States*, 518 F.3d 1291, 1296 (11th Cir. 2008).

demonstrate reversal is merited, and we therefore remain agnostic as to the appropriate standard.

**1**. In *Strickland*, 466 U.S. at 691, the Court instructed that "when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." The district court appears to agree this is just such a scenario as to Douglas and Flowers. As to Robinson, however, the district court appears to have concluded that trial counsel should have recognized that Robinson's testimony was potentially substantial enough as to merit further investigation, whereas the testimony of Douglas and Flowers was at best insignificant and at worst damaging to the theory of the case trial counsel intended to present to the jury. In the district court's words, "because [trial counsel] did not conduct any investigation with respect to Robinson, [the district court] cannot find that [trial counsel] possessed sufficient information about Robinson's likely testimony to make a reasoned judgment that the risk of putting Robinson on the [witness] stand outweighed the potential impeachment value." *McDade*, 639 F. Supp. 2d at 84.

On appeal, McDade relies primarily on *dictum* in *United States v. Debango*, 780 F.2d 81 (D.C. Cir. 1986). In that case, the court stated that "the complete failure to investigate potentially corroborating witnesses . . . can hardly be considered a tactical decision." *Id.* at 85. The court never decided whether the defense attorney's decision not to investigate was unreasonable, however, because it opted to resolve the issue on *Strickland*'s prejudice prong instead. *Id.* In any event, in *Debango* the court referred to a "complete failure to investigate," whereas McDade's trial counsel had information about Douglas's potential testimony and determined that such testimony had only limited impeachment value and could be

easily attacked on cross-examination in a way to make it seem that McDade had sent Douglas to intimidate a government witness in protective custody. Although trial counsel had no recollection of McDade mentioning Flowers, Flowers' affidavit indicates his testimony is essentially the same as Douglas's, making him vulnerable to impeachment on cross-examination for similar reasons. And based on the information that trial counsel received as a result of his conversations with the prosecutor about Robinson, his filing of between 70 and 90 subpoenas for evidence, and his conversations with McDade, trial counsel did not completely fail to investigate Robinson, only declined to interview him. Other cases on which McDade relies — *Johnson v. Bagley*, 544 F.3d 592, 600 (6th Cir. 2008), and *Anderson v. Johnson*, 338 F.3d 382, 392 (5th Cir. 2003) — provide no support for his position because trial counsel decided not to investigate for a combination of reasons, including the minimal impact the substance of the testimony would have regardless of the credibility of the witness.

This appeal, however, does not turn on whether trial counsel was objectively unreasonable in declining to interview Robinson and the other two impeachment witnesses about their potential testimony. As the district court found regarding Robinson, it is unlikely, given trial counsel's effective impeachment of the government's witnesses, and Robinson's intention to assert his Fifth Amendment privilege with regard to most questions, that further impeachment testimony from him would have resulted in a different outcome at trial.

**2**. Under *Strickland*'s prejudice prong, McDade must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *United States v. Carter*, 449 F.3d 1287, 1296 (D.C. Cir. 2006) (quoting *Strickland*, 466 U.S. at 694) (internal quotations omitted). Robinson testified at the § 2255 motion evidentiary

hearing that if he had been called as a witness at McDade's trial, he "would have invoked the Fifth Amendment" with regard to anything beyond whether he had "introduc[ed] Mr. McDade to Ms. Webster." Tr. Jan. 15, 2008 at 103. Given that Robinson's testimony would have been so limited, the district court noted that any proposition that he would have let Robinson testify was "dubious . . . at best." *McDade*, 637 F. Supp. 2d at 85. Because it is unlikely that the district court would have permitted Robinson to testify, there is no "reasonable probability" that Robinson's testimony would have affected the result of the proceedings.

It is McDade's position that if the district court had allowed Robinson to testify (or if the government had granted him immunity), then Robinson's testimony that he had not introduced McDade to Phyllis Webster would have had a sufficient impact on the outcome of the trial to merit a finding of ineffective assistance under *Strickland*. McDade's arguments, however, focus on the fact that Robinson was incarcerated during the period when Webster testified he had introduced her to McDade. Whether or not he was incarcerated, the issue of whether Robinson introduced Webster and McDade is a relatively minor point; tape recordings established Webster and McDade were working together in some capacity, and Webster and Minder were not the only government witnesses to testify that McDade was selling cocaine he received from Webster. Additionally, through cross examination trial counsel had undermined Webster's testimony to the extent that additional impeachment testimony to the effect that Robinson had not introduced Webster to McDade "might," as the district court found, have only "tarnished Webster's credibility slightly." *McDade*, 639 F. Supp. 2d at 85. Robinson's testimony, in sum, was unlikely to "undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. This is true even if all three — Douglas, Flowers, and Robinson — had testified; the

minimal impact of their impeachment testimony over and above the impeachment otherwise achieved by trial counsel through cross examination of the government's witnesses would have been insufficient to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.*

Accordingly, because McDade fails to meet his burden under *Strickland*, we affirm.