# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued January 14, 2013        Decided May 7, 2013

No. 09-3017

UNITED STATES OF AMERICA,
APPELLEE

v.

LARRY BRINSON-SCOTT, ALSO KNOWN AS LARRY SCOTT,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:08-cr-00145-1)

*Sicilia C. Englert* argued the cause for the appellant. *Michael E. Lawlor* was on brief.

*Stratton C. Strand*, Assistant United States Attorney, argued the cause for the appellee. *Ronald C. Machen, Jr.*, United States Attorney, and *Elizabeth Trosman*, *Chrisellen R. Kolb* and *James Stephen Sweeney*, Assistant United States Attorneys, were on brief. *Mary B. McCord*, Assistant United States Attorney, entered an appearance.

Before: HENDERSON and GRIFFITH, *Circuit Judges*, and RANDOLPH, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*: Larry Brinson-Scott appeals his conviction and sentence on one count of possession of powder cocaine with intent to distribute. He contends that the arresting police officers violated his right against self-incrimination; that he was deprived of effective assistance of counsel; and that the district court failed to comply with certain procedural requirements at sentencing. Rejecting all three challenges, we affirm both his conviction and his sentence.

I

Following the arrest of Jonathan Cayol for unlawful possession of a firearm, approximately twelve officers of the District of Columbia Metropolitan Police Department (MPD) executed a search warrant at Cayol's apartment to search for other weapons. Brinson-Scott, Cayol's brother, was the apartment's only occupant when the officers arrived. After entering the apartment, the officers handcuffed Brinson-Scott and ordered him to sit in a chair in the living room. They explained to Brinson-Scott that he was not under arrest and was being handcuffed and detained only to ensure their safety during the search of the apartment. Two officers stood guard over Brinson-Scott while others conducted the search.

Shortly after the search began, one of the officers asked Brinson-Scott which of the two bedrooms in the apartment belonged to him. Brinson-Scott replied that "he was in the room to the right" but "made a head nod to the left." Suppression Hr'g Tr. 38, *United States v. Brinson-Scott*, No. 08-145 (D.D.C. Aug. 1, 2008). The officers proceeded to search both rooms. In the left bedroom, they discovered 59.3 grams of powder cocaine in a jacket in the bedroom closet, some of Brinson-Scott's personal papers and effects and some

ten-to-twenty items of large-sized men's clothing. In the right bedroom, they found $2,512 in cash in a size-54 men's suit jacket in the closet and a protective face mask under the bed. The police also discovered two plates containing cocaine base residue in the living room; more than two hundred small plastic bags of the kind often used to package individual portions of cocaine base for distribution in the kitchen and in the hall closet; and Brinson-Scott's key to the apartment on a table near the kitchen.

Near the end of the search, one of the officers noticed that Brinson-Scott was sitting awkwardly in his chair. The officer ordered Brinson-Scott to stand, at which point the previously cooperative Brinson-Scott became upset. He thrashed about, shouted at the officers and kicked a video game console across the room. The officers searched the chair and discovered a 170.2-gram rock of cocaine base stuffed into the seat cushion. When they discovered the drugs in the seat cushion, Brinson-Scott first disclaimed ownership of the drugs but then exclaimed: "You don't know what it's like to grow up in this neighborhood. What else are we supposed to do?" Trial Tr. 59, *United States v. Brinson-Scott*, No. 08-145 (D.D.C. Nov. 4, 2008) (Trial Tr. 11/4/08) (a statement we hereinafter refer to as his "confession"). Shortly thereafter, the officers placed Brinson-Scott under arrest. At that point, an officer again asked Brinson-Scott which bedroom was his. He replied that he "stay[ed] in the right bedroom, but . . . [ke]pt some of [his] stuff in the left." Suppression Hr'g Tr. 44. At no point during the execution of the search warrant did the police administer the warnings first announced in *Miranda v. Arizona*, 384 U.S. 436 (1966).

A federal grand jury indicted Brinson-Scott on one count of possessing with intent to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(iii) (Count I), and one count of possessing with

intent to distribute powder cocaine in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C) (Count II). Before trial, Brinson-Scott moved to suppress the physical evidence seized from the apartment as well as the statements he made while handcuffed. After a hearing, the district court denied the motion as to the physical evidence and Brinson-Scott's statement, his accompanying head nod and his confession but suppressed as the product of custodial interrogation conducted without *Miranda* warnings his post-arrest statement that he stayed in the right bedroom but kept some of his things in the left bedroom. At trial, the jury found Brinson-Scott guilty on Count II but failed to reach a verdict as to Count I. The district court declared a mistrial on Count I and sentenced Brinson-Scott to 140 months' imprisonment. He timely appealed. During the pendency of his appeal, Brinson-Scott's appellate counsel moved to remand to district court to adjudicate a claim of ineffective assistance of counsel. We remanded and the district court subsequently denied his claim. *United States v. Brinson-Scott*, 840 F. Supp. 2d 305 (D.D.C. 2012).

II

A.

Brinson-Scott argues that his statement indicating that he stayed in the right bed room and his simultaneous head nod to the left were products of un-*Mirandized* custodial interrogation and therefore inadmissible at trial.[1] As an initial

---

[1] At oral argument, Brinson-Scott's counsel attempted to press a Fifth Amendment challenge to the admission of his confession. Because he did not make that argument in his briefs, he has forfeited it. *United States v. Sutherland*, 486 F.3d 1355, 1360 (D.C. Cir. 2007) ("Because [an] argument was raised for the first time at oral argument, it is forfeited.").

matter, the parties disagree about whether we can review the challenge. Whereas Brinson-Scott contends that the challenge is properly before us, the Government argues that, because Brinson-Scott conceded at the suppression hearing that he was not in custody, any error was invited and unreviewable. The Government's position is without record support. Brinson-Scott expressly argued in his suppression motion—something the Government failed to mention in its brief—that he was in custody. Def's Mot. to Suppress Physical Evidence and Statements 6–7, *United States v. Brinson-Scott*, No. 08-145 (D.D.C. June 27, 2008). Nothing that Brinson-Scott's counsel said during the suppression hearing could even remotely be construed as a disavowal of the argument and we caution the Government to familiarize itself more carefully with the record so that it does not make an unsupported argument. Brinson-Scott's Fifth Amendment claim being properly before us, "we examine the district court's legal conclusions de novo, but apply a clearly erroneous standard to its underlying findings of fact." *United States v. West*, 458 F.3d 1, 13 (D.C. Cir. 2006) (quotation marks omitted).

The MPD's detention of Brinson-Scott during the search of the apartment was undoubtedly lawful under the Fourth Amendment. *Michigan v. Summers*, 452 U.S. 692, 705 (1981) (police have "authority to detain the occupants of the premises while a proper search is conducted"); *see also Muehler v. Mena*, 544 U.S. 93, 98 (2005) ("An officer's authority to detain incident to a search is categorical; it does not depend on the quantum of proof justifying detention or the extent of the intrusion to be imposed by the seizure." (quotation marks omitted)). The issue in dispute is whether that lawful detention also constitutes custody within the meaning of *Miranda*. The parties focus their arguments on the significance of the handcuffs, an issue about which some of our sister circuits have reached opposing conclusions.

*Compare United States v. Leshuk*, 65 F.3d 1105, 1109–10 (4th Cir. 1995) (handcuffing suspect does not necessarily elevate *Terry* detention to *Miranda* custody), *and United States v. Bautista*, 684 F.2d 1286, 1292 (9th Cir. 1982) (defendant placed in handcuffs and then questioned during *Terry* stop was not in *Miranda* custody), *with United States v. Cowan*, 674 F.3d 947, 957–58 (8th Cir.) (*Summers* detainee was in *Miranda* custody where defendant was handcuffed, patted down and not told he did not have to answer questions), *cert. denied*, 133 S. Ct. 379 (2012), *and United States v. Newton*, 369 F.3d 659, 676 (2d Cir. 2004) ("[A] reasonable person finding himself placed in handcuffs by the police would ordinarily conclude . . . that he was restrained to a degree normally associated with formal arrest and, therefore, in custody."). Instead of tramping through this constitutional thicket, we will take the alternate route provided us by the facts. *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) (Brandeis, J., concurring) ("The Court will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.").

Brinson-Scott's statement and head nod could be used to establish either or both of two incriminating facts: (1) a link between Brinson-Scott and the left bedroom, or (2) a link between Brinson-Scott and the apartment itself. But even setting aside his statement and head nod, the police recovered overwhelming evidence linking Brinson-Scott to both the left bedroom and the apartment. In their initial search of the left bedroom, the officers recovered a motor vehicle title in Brinson-Scott's name; a citation for a traffic infraction issued to Brinson-Scott; an identification card in Brinson-Scott's name; and mail addressed to Brinson-Scott. After his arrest, Brinson-Scott informed the police that his inhaler was in the

left bedroom and an MPD officer found it there. Moreover, the officers discovered in the closet of the left bedroom ten to twenty items of "very large sized clothing," including the jacket in which the powder cocaine was discovered. Trial Tr. 20, 29–30, *United States v. Brinson-Scott*, No. 08-145 (D.D.C. Nov. 5, 2008). This last evidence is highly relevant because Brinson-Scott is a large man—six feet, three inches tall and 260 pounds—whereas Cayol is "considerably smaller both . . . in height and in weight." Trial Tr. 11/4/2008, at 60. In addition to the evidence linking Brinson-Scott to the left bedroom and thus to the apartment itself, the apartment lease agreement—seized from the apartment complex's leasing office—listed Brinson-Scott as a lessee with Cayol. The police also recovered from a table near the kitchen Brinson-Scott's key to the apartment and used it to secure the apartment after completing the search.

The Congress has instructed us to disregard harmless error in criminal appeals. *See* 28 U.S.C. § 2111; FED. R. CRIM. P. 52(a). "Error is harmless if it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.' " *United States v. Green*, 254 F.3d 167, 170 (D.C. Cir. 2001) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)); *see also Kotteakos v. United States*, 328 U.S. 750, 764–65 (1946). We have explained that

> [i]n determining whether an error is harmless, the court measures the harm in terms of whether the error had substantial and injurious effect or influence in determining the jury's verdict, not merely whether the record evidence [would be] sufficient absent the error to warrant a verdict of guilt. Consequently, an evidentiary error is harmless if . . . the case is not close.

*United States v. Law*, 528 F.3d 888, 899 (D.C. Cir. 2008) (per curiam) (quotation marks omitted; alterations in original).

Even assuming the admission of Brinson-Scott's statement and head nod was error, the error was harmless because the evidence, in the aggregate, links Brinson-Scott to the left bedroom and the apartment beyond a reasonable doubt. Indeed, we have previously so concluded under similar circumstances. In *United States v. Gaston*, the police executed a search warrant at a row house and detained and handcuffed its adult occupants. 357 F.3d 77, 81 (D.C. Cir. 2004). Without giving the *Miranda* warnings, they asked the defendant for his current address and the defendant gave the row house as his address. *Id.* at 81–82. The police discovered contraband there and the Government introduced the defendant's statement at trial. *Id.* 80–81. We concluded that the admission of the statement, even if erroneous, was harmless because "the government introduced ample other evidence"—a dry-cleaning ticket, utility bills and an income tax return—linking the defendant to the row house. *Id.* at 82–83. Here, the Government has presented similar evidence—a motor vehicle title, an identification card, a traffic citation, mail, clothing, a key, an inhaler and a lease—directly tying Brinson-Scott to the apartment. *See United States v. Dykes*, 406 F.3d 717, 722 (D.C. Cir. 2005) (defendant's name on lease and his personal papers at searched premises is "ample evidence that [the defendant] lived in" those premises).

Moreover, the Government mentioned Brinson-Scott's statement and head nod only in passing during its closing argument, instead relying primarily—and with good reason—on the physical evidence linking him to the apartment. *See United States v. Harris*, 515 F.3d 1307, 1311 (D.C. Cir. 2008) (error harmless where "the government made only one glancing reference to" erroneously admitted evidence during closing argument); *see also United States v. Williams*, 212

F.3d 1305, 1311 (D.C. Cir. 2000) (lone allusion in closing argument to erroneously admitted evidence insufficient to make error other than harmless). In light of the Government's other evidence establishing the relevant incriminating facts, the assumed error had neither a "substantial [nor] injurious effect or influence in determining the jury's verdict." *United States v. Johnson*, 231 F.3d 43, 47 (D.C. Cir. 2000). We therefore reject Brinson-Scott's Fifth Amendment challenge.

### B.

Brinson-Scott next claims that he was denied effective assistance of counsel in violation of the Sixth Amendment. At the suppression hearing, two MPD officers testified that Brinson-Scott confessed spontaneously, that is, not in response to any questioning. Based on that evidence, the district court declined to suppress the confession. At trial, a different officer testified that Brinson-Scott uttered his confession "during his conversation back and forth." Trial Tr. 42–43, *United States v. Brinson-Scott*, No. 08-145 (D.D.C. Nov. 6, 2008). Brinson-Scott argues that the trial testimony "contradicted that of [the officers at the suppression hearing] who testified that the statements were spontaneous," Br. of Appellant 23, and contends that his trial counsel's failure to renew the suppression motion in light of this evidence was a denial of effective assistance.

Our sister circuits have settled on the *de novo* standard of review of an ineffective assistance claim. *See United States v. McDade*, 699 F.3d 499, 506 n.7 (D.C. Cir. 2012) (citing cases). We, however, "have thus far expressly declined to fix the appropriate standard, not having been confronted with a case in which the standard made a difference." *United States v. Toms*, 396 F.3d 427, 433 (D.C. Cir. 2005) (Roberts, J.). In this case, we "persist in our agnosticism on the appropriate standard of review" because, under either the abuse of

discretion or *de novo* standard of review, we affirm the district court's denial. *Id.*

Included in the Sixth Amendment's guarantee of counsel is the requirement that counsel meet a threshold level of effectiveness. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). To establish that the threshold has *not* been met, "a defendant must show both deficient performance and prejudice." *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009). "Surmounting *Strickland*'s high bar is never an easy task," *Padilla v. Kentucky*, 130 S. Ct. 1473, 1485 (2010), and "[f]ailure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." *Strickland*, 466 U.S. at 700. The Supreme Court has counseled that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id.* at 697. We follow that course here and conclude that Brinson-Scott's counsel's decision not to renew the suppression motion at trial, even if deficient, did not prejudice Brinson-Scott's defense.

"With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting *Strickland*, 466 U.S. at 694). At bottom, defense counsel's error must have been "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687.

Brinson-Scott made his confession immediately following the discovery of the cocaine base. As far as he knew, the cocaine base was the only incriminating evidence

the police had uncovered because they had not yet informed him of the seizure of the powder cocaine. The only reasonable interpretation of his confession, therefore, is that it was directed to the cocaine base. He would hardly have confessed to possessing drugs he did not know had been discovered. But the jury failed to convict Brinson-Scott on the cocaine base count (Count I). If confessing to the distribution of cocaine base was insufficient to convince the jury to convict him on Count I, his confession likely played no part in the jury's decision to convict him on Count II—the powder cocaine count. We agree with the district court's conclusion that the jury's failure to convict Brinson-Scott of the crime to which he confessed strongly suggests that it gave the confession no weight as to the count on which it did convict. *See Brinson-Scott*, 840 F. Supp. 2d at 309–10.

A closer case might give us pause. But the Government's other evidence against Brinson-Scott was very strong. It included powder cocaine packaged in individual bags seized from a jacket in the left bedroom closet, *see United States v. Johnson*, 592 F.3d 164, 168 (D.C. Cir. 2010) ("It is a fair inference that a defendant exercises constructive possession over contraband found in a room he personally occupies."); thousands of dollars in cash seized from a size-54 men's suit jacket in the other bedroom, *see United States v. Young*, 609 F.3d 348, 355 (4th Cir. 2010) ("The large amount of cash found in [the defendant]'s possession . . . is additional circumstantial evidence of his involvement in narcotics distribution." (quotation marks omitted; bracketed material added)); and a protective face mask and small plastic bags seized elsewhere in the apartment, both associated with drug preparation and distribution. Moreover, Brinson-Scott had very recently pleaded guilty to a similar offense in D.C. Superior Court. Thus, even without the confession, the drugs and drug paraphernalia seized from the apartment establish

his culpability. *See United States v. Spencer*, 530 F.3d 1003, 1007 (D.C. Cir. 2008) ("Common experience suggests that drug dealers must mix and measure the merchandise, protect it from competitors, and conceal evidence of their trade—such as drugs, drug paraphernalia, weapons, written records, and cash—in secure locations. For the vast majority of drug dealers, the most convenient location to secure items is the home.").

In light of all of the evidence, even if Brinson-Scott's counsel's failure to renew the suppression motion was deficient under *Strickland*, Brinson-Scott cannot possibly show a "substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (quotation marks omitted). Because "the strength of the [G]overnment's evidence against [Brinson-Scott] would remain virtually unchanged" had the district court suppressed the confession, our confidence in the result of his trial is unshaken and, accordingly, we affirm the district court's denial of his Sixth Amendment claim. *United States v. Weaver*, 234 F.3d 42, 48 (D.C. Cir. 2000); *see also Kimmelman v. Morrison*, 477 U.S. 365, 375 (1986).

## C.

Finally, Brinson-Scott raises a procedural challenge to his sentence. "Given the broad substantive discretion afforded to district courts in sentencing, there are concomitant procedural requirements they must follow." *In re Sealed Case*, 527 F.3d 188, 191 (D.C. Cir. 2008). The Sentencing Reform Act of 1984, 18 U.S.C. §§ 3551 *et seq*., lays out three procedural requirements. First, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). Second, "after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the

district judge should then consider all of the . . . factors [set out in 18 U.S.C. § 3553(a)(1)–(7)] to determine whether they support the sentence requested by a party." *Id.* at 49–50. In so doing, the sentencing judge "must make an individualized assessment based on the facts presented." *Id.* at 50. Finally, "[a]fter settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Id.*; *see also* 18 U.S.C. § 3553(c).

Brinson-Scott argues that the district court failed to take both the second and the third steps, to wit, it "failed to make individualized findings to support the sentence," Br. of Appellant 11, and "gave no explanation at all" for the sentence it imposed, Reply Br. 23. Although we ordinarily review procedural challenges for abuse of discretion, we review Brinson-Scott's challenges for plain error because, even when given the opportunity, he failed to object to the sentencing court's statement of reasons. *United States v. Locke*, 664 F.3d 353, 357 (D.C. Cir. 2011); *see also* FED. R. CRIM. P. 52(b). Plain error review is highly circumscribed:

> [B]efore an appellate court can correct an error not raised at [sentencing], there must be (1) "error," (2) that is "plain," and (3) that "affects substantial rights." If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if (4) the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings."

*Johnson v. United States*, 520 U.S. 461, 466–67 (1997) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)) (alterations, quotation marks and citations omitted); *see also United States v. Watson*, 476 F.3d 1020, 1023–24 (D.C. Cir. 2007).

Brinson-Scott rests his entire argument on the district court's terse statement: "[F]or reasons that I will not discuss, I believe that the sentence that the Court is imposing is appropriate under the circumstances." Sentencing Hr'g Tr. 28, *United States v. Brinson-Scott*, No. 08-145 (D.D.C. Jan. 30, 2009). We agree that the statement, read in isolation, supports his argument that the district court failed to explain the sentence. But words wrenched from their context can be used to support nearly any proposition. For this reason, we review the whole record to determine whether the district court satisfied the procedural requirements of the Sentencing Reform Act. *See United States v. Young*, 470 U.S. 1, 16 (1985) ("[W]hen addressing plain error, a reviewing court cannot properly evaluate a case except by viewing such a claim against the entire record.").

Although the district court must state its reasons for imposing a particular sentence, "[t]he appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances." *Rita v. United States*, 551 U.S. 338, 356 (2007). Where, as here, the district judge pronounces a within-Guidelines sentence—140 months, at the lower end of the Guidelines range—little explanation is required:

> [W]hen a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation. Circumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence . . . in the typical case, and that the judge has found that the case before him is typical. Unless a party contests the Guidelines sentence generally under § 3553(a)—that is, argues that the Guidelines reflect an unsound judgment, or, for example, that they do not generally treat certain

defendant characteristics in the proper way—or argues for departure, the judge normally need say no more.

*Id.* at 356–57.

Brinson-Scott raised two arguments at sentencing. First, he argued that, although the court properly took account of unconvicted conduct—possessing with intent to distribute cocaine base—in calculating the sentence, he maintained that the 100-to-1 crack-to-powder ratio set forth in the Guidelines was unfair and so he asked the court to substitute a 20-to-1 ratio in its stead. Second, he argued that his personal circumstances—his difficult upbringing, his role as a faithful parent, some higher-level education, extended periods of employment—weighed in favor of a below-Guidelines sentence. He also requested vocational training and drug counseling.

The district court rejected both arguments and explained its reasoning. First, it noted that the Guidelines already reflected a two-point reduction to account for the significant crack-to-powder cocaine disparity and so it declined to reduce the ratio any further. Second, it emphasized Brinson-Scott's role in the drug trade:

I mean, that's—that's the bottom line, that he is a significant drug dealer, characterized by the prosecutor as a mid-level drug dealer.

I must tell you that in my consideration as to what is appropriate, yes, indeed, I do take it into consideration where in the drug distribution hierarchy the defendant before me is.

Sentencing Hr'g Tr. 24. Third, the district court noted that Brinson-Scott refused to take responsibility for his crimes despite "very, very strong" evidence of his guilt. *Id.* at 27.

Finally, the district court explained that Brinson-Scott's recalcitrance and recidivism merited a within-Guidelines sentence. *See id.* at 27 ("I don't think, frankly, Mr. Brinson-Scott, anything that I might say would register with you."); *id.* at 28–29 ("I can tell you, sir, that one of the things that I considered is the fact that you, in fact, have come before judges before charged with the same thing, distributing cocaine. But . . . you have continued to break the law."). The court also ordered that Brinson-Scott receive 500 hours of drug abuse counseling.

In light of the court's explanation of its reasoning, Brinson-Scott's contention that it failed to comply with section 3553(c) is without merit. Granted, the district court's explanation did not invoke any of the section 3553(a) factors by name. But we do not require that it do so. Sentencing, after all, is not a game of Simon Says. We require simply that the court's "discussion of appellant's sentence 'sound[] in the terms of § 3553(a), and the court's references manifest an understanding of its statutory responsibility.' " *United States v. Staton*, 626 F.3d 584, 585 (D.C. Cir. 2010) (per curiam) (quoting *United States v. Simpson*, 430 F.3d 1177, 1186 (D.C. Cir. 2005)). The court's consideration of Brinson-Scott's role in the drug-distribution hierarchy, his refusal to take responsibility for his crimes and his lengthy history of drug dealing track the section 3553(a) factors, particularly "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), and "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense," *id.* § 3553(a)(2)(A). The district court's grant of Brinson-Scott's request for 500 hours of drug abuse counseling further reflects its consideration of "the need . . . to provide the defendant with needed . . . medical care." *Id.* § 3553(a)(2)(D).

Moreover, the district court's consideration of Brinson-Scott's particular role in the drug trade, of his recalcitrance and of his recidivism represents precisely the sort of "individualized assessment based on the facts presented" which the Sentencing Reform Act requires. *Gall*, 552 U.S. at 50.

Although the district court's explanation did not include each section 3553(a) factor, it "need not consider every § 3553(a) factor in every case." *Sealed Case*, 527 F.3d at 191. A sentencing court satisfies the requirements of the Sentencing Reform Act so long as it considers the section 3553(a) factors implicated by the defendant's arguments. *Simpson*, 430 F.3d at 1187 ("When a defendant has not asserted the import of a particular § 3553(a) factor, nothing in the statute requires the court to explain sua sponte why it did not find that factor relevant to its discretionary decision."). Here, the court did precisely that. Before pronouncing the within-Guidelines sentence, it considered Brinson-Scott's arguments for a below-Guidelines sentence and rejected them, explaining its reasoning sufficiently. The Sentencing Reform Act requires no more. *Rita*, 551 U.S. at 356–57.

For the foregoing reasons, we affirm the district court's judgments.

*So ordered.*